MANSFIELD GAS COMPANY *v.* ALEXANDER.

Opinion delivered January 2, 1911.

1. FORFEITURE—ENFORCEMENT IN EQUITY.—Equity will enforce a forfeiture of a lease giving exclusive right to explore for minerals upon a tract of land where it would be inequitable to permit the lessee longer to assert such right by reason of his continued default. (Page 170.)

2. GAS—LEASE—IMPLIED CONTRACT.—Where a lease of lands for the purpose of prospecting for gas and minerals was executed in consideration of the lessee's agreement to pay royalties upon such gas or minerals, the law implies a covenant upon the lessee's part to begin the exploration for gas and minerals within a reasonable time. (Page 171.)

3.   SAME—IMPLIED OBLIGATION TO DEVELOP.—In a lease of lands for the term of 50 years whereby the lessee had the exclusive right to prospect for gas or minerals, and was required to begin work toward prospecting and developing these lands or other lands within four miles thereof within one year from the date thereof, there was an implied agreement that the development of the mining right in the lands in question should be prosecuted with reasonable diligence, and a failure to do so for eight years justifies a finding that there was an abandonment of the lease.   (Page 173.)

Appeal from Scott Chancery Court; *J. V. Bourland,* Chancellor; affirmed.

*Youmans & Youmans,* for appellant.

The lease itself provides the condition of forfeiture. Failure to begin the work of prospecting and developing the lands described therein "or other lands within four miles thereof within one year from the date of execution of the lease" would have worked a forfeiture; but, the terms of the lease having been complied with in that respect, no other ground of forfeiture can be implied.

That there is an implied covenant to use reasonable diligence to develop the leased lands may be conceded, but a breach of such implied covenant does not have the effect to forfeit the lease, nor is it good cause for the court to declare such forfeiture unless the lease in express terms had provided that such breach should forfeit the lease.   48 N. E. 502; Thornton on Oil and Gas, 189; 140 Fed. 801; 52 W. Va. 276; 32 N. J. Eq. 268; 138 Pa. 230; 68 Kan. 126; 74 Pac. 625; 51 Pa. 232; 84 N. E. 46.

*Read & McDonough,* for appellee.

The lease contract is unilateral. Under its terms there is no agreement on the part of appellant to do anything in so far as these lands are concerned. It could abandon them at any time, or withhold operations for the full period of the lease, 50 years.   67 S. W. 545, 547; 74 S. W. 105; *Id.* 590; 90 Fed. 178, 181; 99 Fed. 606; 17 Am. Rep. 692; 34 S. E. 923.

It is inequitable and should be canceled for that reason. Thornton on Oil and Gas, § 129; Bryan on Petroleum, 146; 99 Fed. 606; 99 S. W. 668; 112 Fed. 373.

Appellant has violated the implied covenants of the lease.

The essence of an oil or gas lease is the exploration of the land for oil or gas.   90 N. E. 632; 126 Fed. 623; 94 Pac. 142; 106 Pac. 47.

FRAUENTHAL, J.   This was an action instituted by the appellee to cancel a mineral lease which by due and proper assignment by the lessee had been transferred to the appellant. The lease was executed on March 8, 1901, by the lessor, who was the owner of the land, in consideration of one dollar and the covenants therein contained.   By its terms it leased the lands therein described for a term of 50 years for the purpose of mining, boring and operating lead, zinc, coal, gas, oil and other minerals, and gave to the lessee the exclusive right to prospect for and mine said minerals during the continuance of the term of the lease.   It gave to the lessee the right to erect all necessary buildings and make ways of ingress and egress upon the premises to carry on the business of doing said prospecting and mining and the right to have possession whenever the lessee was ready to commence operation.   In event the lessee was successful in obtaining said minerals on the land, the lessee agreed to pay to the lessor a certain per cent. of the value of such minerals; and, in event of a failure to obtain any minerals by reason of such operations, it was provided that the lessee should have the right to remove all buildings and machinery placed by it on the land.   It was also provided that if the lessee failed "to begin work toward prospecting and developing on these lands or other lands within four miles of these above-described within the period of one year from the date hereof, then these presents and everything contained therein shall cease and be forever null and void."

It appears from the testimony that the appellant owned a large number of similar leases from different persons in this section, upon some of which it had made a little development in obtaining gas.   It bored three or four wells within a mile and one-half of the land in controversy and within one year from the date of said lease; but it made no search for any gas or minerals on the land in question and made no development of any nature thereon.   Some years prior to the institution of this suit the appellee demanded of appellant that it make search and operation of his said land for said minerals, but appellant

refused to comply with such demand and indicated that it would not make any search or development until it should determine that it would be profitable to appellant to do so. In the meanwhile it had developed gas in some other fields which was sufficient to serve appellant's needs and purposes. The chancery court found that the appellant and its grantor had failed and refused to develop the leased lands in any way or manner by boring, mining or operating for any of the minerals mentioned in the lease and refused to permit it to be done by others; and that by reason of its failure to develop the lands for said purposes or to permit it to be done by others appellant "had forfeited said lease." It thereupon entered a decree cancelling said lease.

In deciding whether or not the lower court was right in entering a decree cancelling said lease we think it only necessary to determine whether or not the appellant and those from whom it obtained the lease have failed and refused to perform the covenants imposed upon them by the lease under such circumstances as to work a forfeiture thereof; for equity may enforce a forfeiture of a contract of lease giving the exclusive right to explore for minerals upon a tract of land where it would be inequitable to permit the lessee longer to assert such right by reason of his continued default. The respective rights of the parties must be determined by the respective obligations which they assumed by virtue of the contract of lease and by the manner in which they have performed or failed to perform those obligations. What then were the mutual obligations entered into by the execution of this lease? The contract was made for the mutual benefit of the parties. The purpose of the lease was not to make a grant of the land or to transfer any estate therein. It only gave a right to the lessee to search for minerals and an interest in the minerals when so found and taken out. The consideration moving to the lessor for the execution of the lease was not the nominal sum of one dollar mentioned therein, but was obviously the royalties upon the minerals which should be discovered and taken from the land. The lessor was to obtain a certain percentage of the minerals that would be thus discovered and mined. And this was the only real benefit that would accrue to him from the execution

of the lease; this was his sole compensation. The only way in which he could obtain this compensation and benefit would be by the exploration of the land and discovery of the minerals thereon. With the view of obtaining such benefit the lessor executed the lease, relying on the lessee to make such exploration and obtain such minerals. That was the evident purpose of the execution of the lease. The lease was not executed for speculative purposes, but for present benefits or for benefits to be obtained within a reasonable time, and the lessee must have so understood the contract because it gave no other hope of compensation to the lessor therefor.

There was therefore an implied covenant in the lease on the part of the lessee to search for and, if found, to obtain the minerals from the land. "Although the lease is silent, the law implies a condition on the part of the lessee for diligent exploration, development and operation in good faith, and whatever is necessary to the accomplishment of that which is expressly contracted to be done under an oil or gas lease is part of the contract, although not specified, and, when so incorporated by implication, is as effectual as if expressed." (27 Cyc. 728). And the general rule for the construction of mineral leases, such as is involved in this case, is that the law implies a covenant upon the part of the lessee to make the exploration and search for the minerals in a proper manner and with reasonable diligence and to work the mine or well when the mineral is discovered, so that the lessor may obtain the compensation which both parties must have had in contemplation when the agreement was entered into.

In the case of *Ray* v. *Natural Gas Co.,* 138 Pa. St. 576, in speaking of such a lease, the court said: "Whilst the obligation on the part of the lessee to operate is not expressed in so many words, it arises by necessary implication. * * * If a farm is leased for farming purposes, the lessee to deliver to the lessor a share of the crops in the nature of rent, it would be absurd to say, because there was no express engagement to farm, that the lessee was under no obligation to cultivate the land. An engagement to farm in a proper manner and to a reasonable extent is necessarily implied." And this principle is peculiarly applicable to the character of lease involved

in this case; and the implied covenant on the part of the lessee to make diligent search and operation of the land must be performed in order to keep such a lease in existence and to avoid its forfeiture. In speaking of such character of leases Mr. Thornton in his work on "The Law Relating to Oil and Gas," § 127, says: "It is the duty of the lessee to make diligent search and operation of the leased premises; and it is not necessary that a provision for such search or operation be inserted in the lease; for it is an implied covenant in every oil and gas lease that a diligent search and operation will be prosecuted. And where the only consideration was the royalty, a failure on the part of the lessee to commence operations for eight months was held to be an abandonment."

The plain object of such leases is that there will be a diligent search made on leased land for the minerals and if discovered a diligent operation thereof. By this lease an exclusive right to make such search and to mine the discovered product was given to the lessee for a long term of years. The sole compensation of the lessor was in the royalties which he might receive, and, if there was no product, there was no benefit to the lessor. In the case of *Huggins* v. *Daley*, 99 Fed. 606. there was before the court a lease giving the right of exploration and development of the land for minerals to the lessee. In that case the court said: "Where the sole compensation to the landowner is a share of what is produced, there is always an implied covenant for diligent search and operation. There is perhaps no other business in which prompt performance is so essential to the rights of the parties or delays so likely to prove injurious. * * * Where the only consideration is prospective royalty to come from exploration and development, failure to explore and develop renders the agreement a mere *nudum pactum* and works a forfeiture of the lease; for it is of the very essence of the contract that work should be done. * * * No such lease should be construed as to enable the lessee who has paid no consideration to hold it merely for speculative purposes, without doing what he stipulated to do and what was clearly in the contemplation of the lessor when he entered into the agreement."

In the case of *Maxwell* v. *Todd*, 112 N. C. 677, the court

construed a mineral lease which gave the lessee an exclusive right to explore a tract of land for a long term of years and to take therefrom the minerals that might be discovered, paying to the lessor a part of the proceeds received from such minerals. There was no stipulation in the lease that it would be forfeited for a failure to explore the land or to take therefrom the minerals that might be discovered. In that case the court held that "the law will construe the contract as if such a stipulation had been expressly written therein, and will adjudge such lease to be forfeited if, within a reasonable time, the lessee fails to carry out the purpose of the lease."

In the construction of mineral leases such as is involved in this case the authorities uniformly hold that there is an implied obligation on the part of the lessee to proceed with the search and also with the development of the land with reasonable diligence according to the usual course of such business, and that a failure to do so amounts in effect to an abandonment and works a forfeiture of the lease. *Petroleum Co.* v. *Coal, Coke & Mfg. Co.*, 89 Tenn. 381; *Conrad* v. *Morehead*, 89 N. C. 31; *Oliver* v. *Goetz*, 125 Mo. 370; *Island Coal Co.* v. *Combs*, 152 Ind. 379; *Aye* v. *Philadelphia Co.*, 193 Pa. St. 451; *Rawlings* v. *Armel*, 70 Kan. 778; *Price* v. *Black*, 126 Iowa 304; *Cowan* v. *Radford Iron Co.*, 83 Va. 547; *Guffy* v. *Hukill*, 34 W. Va., 49; *Bay State Petroleum Co.* v. *Pa. Lubricating Co.*, 87 S. W. 1102. The lease involved in this case gave to the lessee the exclusive right to prospect for minerals upon the land described therein and to take therefrom the minerals that might be discovered; it gave this exclusive right for a period of fifty years, and it did not specify any time when the search or the development should be made on the land thus leased. The sole compensation which the lessor was to receive for the execution of the lease was a certain per cent. of the value of the minerals that should be mined. According to the uniform holding of the authorities, the law will read into this lease a covenant on the part of the lessee that it will with due and proper diligence search the land described in the lease for minerals and will with due and proper diligence develop the same. This implied covenant is in effect a condition upon

which the lease was made; a failure or refusal to perform that condition results in a forfeiture of the lease.

But it is urged that the lease expressly provides that a failure to prospect and develop on these lands or on other lands within four miles thereof within one year from the date of the lease would work a forfeiture thereof; and that this express provision for a forfeiture excludes any implied forfeiture for any other reason. It is true that when such a lease expressly provides when and how the search for the minerals shall be made upon the leased lands then there can be no reason for implication relative thereto, and such provision expressly made must control. But in the case at hand the lease did not expressly provide when the exploration and development of the leased land should commence. The compensation which the lessor would receive could only come from a development of mines upon his own land. The exploration of, and securing gas from, adjoining land, instead of being a benefit, would actually result in an injury to his land, because it would tend to tap and take from his land the gas thereon. The plain purpose of the lease was that the lessee should develop the land of the lessor, and this proviso only named the time and place when and where the operations should begin for the work of prospecting and development. In event no such provision had been in the lease, the law would have implied that the lessee agreed to begin such operations within a reasonable time. But where in such leases there is no stipulation as to when and how the development shall continue, then the law also implies that the lessor covenanted to prosecute the operations with due and proper diligence after beginning same. It will not be sufficient to simply begin, but the operations must also continue. Now, in this provision of the lease there is nothing said about the continuation of the prosecution of the work of search and development upon the land; it solely provides for the beginning of such work. There is no stipulation in the lease indicating when and how the work shall be continued after it is begun. If the lessee under this provision had bored one well on the leased land or on other lands within four miles thereof within one year from the date of the lease and had found no oil, gas or other mineral, it would have complied with all that this pro-

vision required, although it then ceased all further operations. But such was clearly not the intent or purpose of this lease. In this proviso it only named when and where the work toward prospecting and development should begin, but it did not provide that the exploration and development should continue on the other lands situated within four miles of the leased land. Nor did it provide that, after having begun such exploration or development within one year from the date of the lease, it could then cease all operation and still hold the lease. Nothing is herein stipulated as to when or where the prosecution of this work should be made after it was thus begun. We conclude that the proper construction of the lease is that the lessee covenanted, after having begun the work of prospecting and developing on the leased land or on other lands within one year from the date of the lease, that it would then continue a diligent search and operation of the land described in the lease.

In Thornton on Law Relating to Oil and Gas, § 141, it is said:

"A cessure of work will operate as a termination of a lease by abandonment, especially where the first or second well proves to be a dry one. * * * So, too, if he (the lessee) is to begin the development of the leased premises by a certain time he must prosecute the work in the manner in which the business is ordinarily carried on and with ordinary diligence until the search for oil or gas is ended, either by finding it and thereafter operating the premises, or by demonstrating that there is no oil or gas and surrendering the lease."

The appellant was not bound by the lease to begin the work of prospecting upon the leased land; it had the right to begin such work on that land or on other land within four miles thereof and within one year from the date of the lease. But, after having thus begun the work, it had no right then to quit without surrendering the lease. By the implied covenants of this lease it was then bound to continue its search and operation upon the lands described in the lease. It was then bound to operate on this land or quit. It could not, after having begun the work of search and operation on other land, then fail to search and operate on the leased land. It was bound then to continue its search and development on the leased land

or quit and surrender the lease. *Steelsmith* v. *Gartlan,* 44 L. R. A. 107; *Munroe* v. *Armstrong,* 96 Pa. St. 307. The chancellor found that the appellant and its grantor did not continue the work of prospecting and developing on the lands mentioned in the lease with due and proper diligence, and that it failed and refused to do this for such a length of time as to work a forfeiture of the lease. This finding, we think, is supported by the evidence. For eight years prior to the institution of this suit appellant has failed to continue the search and development of the appellee's land, and in effect has refused to prosecute any operations on this land, although it claims that it does not intend to abandon the lease. Its protracted delay and long-continued failure to do the things contemplated by the lease, and which the law implies it convenanted to do, are equivalent to an abandonment of the lease by it. The chancellor, we think, was therefore right in entering a decree cancelling the lease.

The decree is affirmed.