DALEY ET AL., APPELLANTS, *v.* TORREY, RESPONDENT.

(No. 5,400.)

(Submitted February 5, 1924.  Decided February 16, 1924.)

[223 Pac. 498.]

*Cancellation of Instruments—Mines and Minerals—Oil and Gas Leases—Construction—Contracts—Written Portion Controls Printed Part.*

Oil and Gas Lease—Strict Construction in Favor of Lessor.
  1.  An oil and gas lease should be construed strictly against the lessee and in favor of the lessor.

Contracts—Written Portion Controls Printed Part.
  2.  Under section 7542, Revised Codes of 1921, the written portion of a contract controls that which is printed.

Oil and Gas Lease—Written Portion Controlling.
  3.  *Held,* in an action to enforce the cancellation of an oil and gas lease and to recover damages for refusal to cancel (Rev. Codes, secs. 6902–6904), that a written paragraph therein, providing that in the event a well was not commenced within the time limit mentioned in the lease, the instrument should be null and void, was controlling as against a printed one under which, if the operations were not commenced within that time the lessor should pay two dollars per acre for each additional year commencement of drilling was delayed, and that demurrer to the complaint was improperly sustained.

*Appeal from District Court, Toole County, in the Nineteenth Judicial District; H. J. Miller, Judge of the Sixth District, presiding.*

ACTION by Thomas H. Daley and another against N. B. Torrey. Judgment for defendant and plaintiffs appeal. Reversed, with directions.

*Mr. Louis P. Donovan,* for Appellants, submitted a brief, and argued the cause orally.

No appearance in behalf of Respondent.

MR. JUSTICE COOPER delivered the opinion of the court.

The plaintiffs instituted this action to enforce the cancellation of an oil and gas lease, executed and delivered by them to the defendant. Their complaint alleges that they are the owners of the leased premises (760 acres) situated in Toole county; that on August 16, 1922, the defendant prepared, and the plaintiffs executed and delivered to him, the instrument in question, describing the lands leased; that the lease was upon a printed form prepared by defendant, with the exception of one paragraph, which was written in with a pen; that the consideration for its execution was $1 paid to plaintiffs as lessors; that it gave to defendant exclusive right to enter upon the lands at all times to drill and operate wells for oil, gas and water and to build tanks, structures, buildings and appliances for the proper handling of the product of the proposed wells. It further alleged that by reason of the defendant's failure to commence a well within six months from the date of the lease, as he thereby agreed to do, it became forfeited on February 17, 1923; but that, notwithstanding such forfeiture, he has neglected and refused to execute a release of the lease within sixty days from date it became forfeited, and to have the release placed of public record, although plaintiffs, on or about April 11, 1923, verbally and in writing made demand that he do so; that by reason of such failure and neglect to comply with the terms of his agreement, plaintiffs have been prevented from making a new lease of their lands or from otherwise disposing of the same, to their damage in the sum of $7,600; that they have been obliged to employ counsel

to prosecute this action; that twenty days before the bringing of this suit they made written demand upon defendant to cancel the lease of record. The prayer is that they be allowed to recover damages they have suffered on account of defendant's neglect and refusal to cancel the lease of record, the imposition of $100 penalty for his refusal to cancel the lease, for reasonable attorney's fees and for costs.

The defendant demurred to the complaint upon the general ground that it did not state facts sufficient to constitute a cause of action, and upon the special ground that its averments were ambiguous and uncertain, in that it could not be ascertained therefrom upon which one of two clauses of the lease he intended to rely: The printed paragraph in which he agreed to pay annual rentals of $2 per acre in case he failed to "commence a well" within six months from the date of the lease; or upon the written forfeiture clause, in which it was mutually agreed that the lease should be null and void in case he did not so commence the well. The district court sustained the demurrer, and, upon plaintiffs' refusal to amend their complaint, entered judgment for defendant. Plaintiffs appeal. The defendant made no appearance in this court.

The relief asked in the complaint is that accorded by sections 6902, 6903 and 6904 of the Revised Codes of 1921, re-
[1–3] quiring the lessee to cancel a lease of record within sixty days of its forfeiture, providing a remedy in case of his refusal to release the same, the recovery of damages therefor, and such additional damages as the evidence in the case might warrant.

The question raised by the demurrer and argued by counsel for appellants is whether the written portion declaring the lease a nullity prevails over and controls the printed parts. The averment in the fourth paragraph of the complaint is that the defendant failed to commence a well upon said premises within six months from the date of the lease.

Mr. Thornton, in section 83 of the third edition of his work on the law of Oil and Gas, says: "In a celebrated case it was

said with reference to the rule to be applied to the construction of oil and gas leases that 'such leases are construed most strictly against the lessee and favorable to the lessor.' '' Another author says: ''Oil-leasing companies prepare their own forms and their leases are to be construed strictly against them in favor of the lessor.'' (Morrison-De Soto on Oil and Gas Rights, 62.)

Our own Code provides that ''The language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.'' (Sec. 7545.)

By section 7542 the written part is to control the printed part.

This controversy is to be decided upon the two clauses of the lease following. The printed section reads: ''Second party covenants and agrees to commence a well on said premises within six months from the date hereof (August 16, 1922), or pay to the first parties at the rate of two dollars per acre for each additional year such commencement is delayed, after the expiration of six months, payable quarterly, from the time above mentioned for the completion of such well until well is completed or this lease is surrendered as is hereinafter provided, and to pay any damages to growing crops caused by operations.'' The one written with a pen: ''It is mutually agreed that in the event no well is drilled or commenced on said described premises within the time herein stated that this lease shall be null and void.''

If the first sentence of the printed paragraph is read in connection with the written clause, it will plainly appear that the words ''within the time herein stated'' found in the latter, refer to the date upon which the instrument was executed. We may therefore substitute the date August 16, 1922, for the words just quoted. The written clause will then read thus: ''It is mutually agreed that in the event no well is drilled or commenced on said described premises within six months from August 16, 1922, that this lease shall be null and void.''

This is the natural and reasonable interpretation which should be given it. In short, the demurrer admits the allegations of the complaint that the defendant agreed to "commence a well" within six months from the date of the lease, and that he failed to comply with his agreement in that respect. In cases involving provisions almost identical with those under consideration here the same conclusion was reached. (*Johnston* v. *Shaffer* (Okl. Sup.), 176 Pac. 901; *Lima Oil & Gas Co.* v. *Pritchard* (Okl. Sup.), 218 Pac. 863; *Mansfield Gas Co.* v. *Alexander*, 97 Ark. 167, 133 S. W. 837.) The complaint was good against both the general and special grounds of demurrer.

The judgment is reversed, with directions to overrule the demurrer.

*Reversed.*

Mr. Chief Justice Callaway and Associate Justices Holloway, Galen and Stark concur.