SOLBERG, RESPONDENT, *v.* SUNBURST OIL & GAS CO., APPELLANT.

(No. 5,868.)

(Submitted March 26, 1926. Decided April 22, 1926.)

[246 Pac. 168.]

*Oil and Gas Leases—Forfeitures—Failure of Lessee to Clear Record of Lease—Damages—Time Essence of Contract—Notice—Waiver—Estoppel—Evidence—Market Value of Lease —Expert Testimony—Abatement of Action—Appeal—Law of Case.*

Oil and Gas Leases—Liberal Construction in Favor of Lessor—Time Essence of Contract.
1. In the case of an oil and gas lease which requires the lessee to do nothing but simply gives him the option to prospect the leased premises, time is of the essence of the contract though its terms do not so provide, and the provisions thereof must be liberally construed in favor of the lessor.

Same—Covenant to Commence Drilling Operations—Compliance a Condition Precedent to Accrual of Rights in Lessee.
2. Compliance with the covenant in an oil and gas lease to commence drilling operations within the time stated therein is in the nature of a condition precedent to the accruing of rights in the lessee.

Same—Failure to Commence Operations—Forfeiture Favored by Law.
3. While, generally speaking, forfeitures are not favored in the

---

1. Time as of essence of options, see notes in 118 Am. St. Rep. 598; 21 L. R. A. 129; Ann. Cas. 1913A, 365. See, also, 27 R. C. L. 343.
2. See 18 R. C. L. 1210.
3. See 6 R. C. L. 906.

law and by section 7408, Revised Codes of 1921, it is provided that a condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created, in the case of an oil and gas lease of the nature of the above (par. 1), forfeiture is favored rather than frowned upon because of the injury that may result to the lessor from delay, where it clearly appears that the lessee has failed to commence operations within the time stipulated or thereafter neglected to prosecute such operations with diligence.

Judgment—Adjudication of What.

4. A judgment is an adjudication, not merely of the conclusions expressed, but of everything necessarily included therein or necessary thereto.

Appeal—Opinion on Appeal Law of Case on Second Trial, When.

5. Where the testimony on a retrial of a cause is substantially the same as on the first trial, the opinion rendered by the supreme court on appeal from the judgment rendered on the first established the law of the case and the trial court cannot be put in error for following the direction contained therein.

Oil and Gas Leases—Forfeiture for Failure to Commence Drilling—Notice not Required.

6. The lessor of oil and gas rights is not required to give written notice of his intention to declare a forfeiture of the lease for failure of the lessee to commence drilling operations within the time stipulated, to entitle him to prevail in an action brought under sections 6902–6904, Revised Codes of 1921, for damages for failure to clear the record of the forfeited lease.

Waiver—What Constitutes.

7. A waiver consists of the relinquishment of a known right and, while a waiver may be implied by the conduct of him against whom it is alleged, the circumstances must be such as to furnish a basis for an inference of knowledge and intention on his part to forego the right which might have been asserted.

Oil and Gas Leases—Waiver of Failure to Commence Operations—When Defense not Available.

8. Where an oil and gas lease provided that the lessee should commence drilling operations within eight months on a certain "dome" and a well on the lessor's land within three years, and the lessee did not commence operations on the dome until twenty months after the execution of the lease, the lessor could not be held chargeable with knowledge that the lessee did so in reliance upon the lease and could therefore not be held to have waived the default by failure to object.

Same.

9. While failure to object to continued operations by an oil lessee upon the lessor's own lands after default in carrying out the provisions of the lease might estop the latter from later asserting a forfeiture, such failure to object to operations upon land near his own, cannot have that effect or justify a claim of waiver of the default.

4.  See 15 R. C. L. 976.
5.  See 2 R. C. L. 223.
7.  See 27 R. C. L. 904.

Waiver—Estoppel by Silence—Not Available in Absence of Duty to Speak in Party Sought to be Estopped.

10.    Though silence may constitute the basis of an estoppel if there is a duty to speak, it has no effect either as an estoppel or waiver in the absence of such duty.

Oil and Gas Leases—Forfeiture—If Notice Required, Oral Notice Sufficient.

11.    If notice by the lessor of an oil and gas lease to declare a forfeiture under its terms is necessary it is sufficient if made orally, and where it appeared that immediately upon default he made demand of the lessee to return the lease, the notice sufficed, and an instruction that plaintiff has waived his right to declare a forfeiture by failure to give notice was properly refused.

Same—Operations Commenced After Forfeiture of No Effect.

12.    After forfeiture of an oil and gas lease has been declared and demand made for its return for nonperformance of the condition to commence drilling operations within a given time, it is immaterial that the lessee thereafter commenced drilling, and the lessee's failure to release the lease of record within sixty days entitles the lessor to prosecute his action under sections 6902–6904, Revised Codes of 1921.

Same—Failure of Lessee to Clear Record of Forfeited Lease—Nature of Action to Recover Damages—Complaint.

13.    *Held,* that the rules of pleading and proof governing actions for damages for slander of title are not applicable to an action for damages caused by failure of an oil and gas lessee to release the lease of record, and that therefore it was not necessary for plaintiff to allege and prove that he had a buyer ready, willing and able to purchase, giving his name and proposed selling price, and that but for the failure complained of a sale would have been consummated.

Same—Failure of Lessee to Release Lease of Record—Measure of Damages.

14.    In an action for damages brought under sections 6902–6904, *supra,* which is tortious in its nature, the measure of damages recoverable is the fair market value of an oil and gas lease at a time when the record should have been clear, *i. e.,* plaintiff may recover its highest market value at any time up to the time of trial.

Special Damages must be Pleaded.

15.    To entitle plaintiff to special damages the manner in which he suffered them must be pleaded.

Oil and Gas Leases—Failure of Lessee to Clear Record of Forfeited Lease—Damages—Market Value—Expert Testimony—Admissibility.

16.    Testimony of a real estate dealer who dealt in oil and gas leases relating to the market value of such leases at the time defendant should have released from record the lease obtained from plaintiff and a year thereafter, though meager, was properly admitted, and the fact that he thereafter on cross-examination admitted that no leases were taken in the particular field during the period covered by his testimony went to the weight of his evidence and not to its admissibility.

Appeal—Verdict Based on Substantial Evidence Conclusive, Though Evidence Inherently Weak.

17.    A verdict based upon substantial evidence which could have been accepted as credible by the jury, is binding upon the supreme court even though the evidence may appear inherently weak.

[76 Mont. 254.]

Oil and Gas Leases—Sale of Lessor's Land on Foreclosure Does not Abate Action to Recover Damages for Failure to Clear Record of Forfeited Lease.

18. That plaintiff's land was sold on foreclosure sale after his action for damages brought under sections 6902–6904, Revised Codes of 1921, was commenced, and the period of redemption had expired prior to retrial of the cause, did not result in the abatement of the action. (Sec. 9086, Rev. Codes, 1921.)

Same—Assignment—Assignee must at His Peril Ascertain Whether Forfeiture Incurred.

19. Where an oil and gas lease provides for a forfeiture under certain conditions, the assignee thereof must at his peril ascertain whether or not a forfeiture has been incurred, and if it has and the assignee thereafter, in reliance upon the lease, expends money in testing the field, the fact that he did so in good faith cannot avail him in an action of the nature of the above.

[1]   Mines and Minerals, 40 C. J., sec. 666, p. 1053, n. 4, 5, 9, 10; sec. 667, p. 1054, n. 20; sec. 685, p. 1068, n. 24.

[2]   Mines and Minerals, 40 C. J., sec. 685, p. 1068, n. 25.

[3]   Mines and Minerals, 40 C. J., sec. 694, p. 1076, n. 47; p. 1077, n. 60, 62, 63; sec. 696, p. 1078, n. 79.

[4,5]   Appeal and Error, 4 C. J., sec. 2557, p. 663, n. 92; sec. 3268, p. 1217, n. 10.

[6]   Mines and Minerals, 40 C. J., sec. 703, p. 1084, n. 68 New.

[7–9]   Mines and Minerals, 40 C. J., sec. 705, p. 1085, n. 83; p. 1086, n. 84; Waiver, 40 Cyc., p. 252, n. 44; p. 253, n. 45; p. 259, n. 3.

[10]   Estoppel, 21 C. J., sec. 154, p. 1150, n. 90; Waiver, 40 Cyc., p. 263, n. 22.

[11]   Mines and Minerals, 40 C. J., sec. 703, p. 1084, n. 64 New; Trial, 38 Cyc., p. 1619, n. 38; p. 1620, n. 39.

[12]   Mines and Minerals, 40 C. J., sec. 707, p. 1086, n. 3; p. 1087, n. 4.

[13]   Mines and Minerals, 40 C. J., sec. 707, p. 1087, n. 4.

[14]   Mines and Minerals, 40 C. J., sec. 707, p. 1087, n. 4; sec. 718, p. 1096, n. 33 New.

[15]   Mines and Minerals, 40 C. J., sec. 306, p. 1002, n. 78; sec. 707, p. 1087, n. 4.

[16]   Mines and Minerals, 40 C. J., sec. 707, p. 1087, n. 4.

[17]   Appeal and Error, 4 C. J., sec. 2834, p. 853, n. 59; p. 854, n. 74.

[18]   Abatement and Revival, 1 C. J., sec. 222, p. 143, n. 47.

[19]   Mines and Minerals, 40 C. J., sec. 707, p. 1086, n. 3.

*Appeal from District Court, Toole County in the Nineteenth Judicial District; George Bourquin, a Judge of the Second District, presiding.*

ACTION by Martin Solberg against the Sunburst Oil & Gas Company. Judgment for plaintiff, and defendant appeals. Affirmed.

76 Mont.—17

*Mr. Homer G. Murphy,* and *Messrs. Hurd, Rhoades, Hall & McCabe,* for Appellant, submitted a brief; *Mr. George E. Hurd* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is the third appeal in an action to compel the release of record of a certain oil and gas lease and for damages for failure to clear the record thereof

The lease covered 320 acres of land in Toole county, and was executed by plaintiff, Solberg, to one Gordon Campbell on July 19, 1920. It granted to Campbell the lands described for the period of twenty years, but for the sole purpose of mining and operating for oil, gas, *etc.,* and in consideration of this demise Campbell agreed to pay to the plaintiff twelve and one-half per cent royalty on all oil and gas marketed from the premises and to commence a well upon the premises within three years. The only covenant of the lessee, however, with which we are concerned, is a like agreement to "commence drilling operations for oil in what is known as the Rocky Ridge Dome" within eight months from and after the date of the lease, and "to prosecute such operations diligently thereafter, unless prevented by strikes, the elements, unavoidable accident, or other causes beyond the control of the second party, until a well 2,500 feet in depth is drilled or until oil   *   *   *   is discovered in paying quantities at a lesser depth." This clause does not provide for the payment of rental as an alternative to drilling, nor does the lease, in terms, provide for its termination or forfeiture on failure to comply with its provisions.

The only reference to default, forfeiture, or notice is found in the following clause: "It is further agreed that, in case of the default of the party of the second part in the performance of any of the terms and conditions of this lease, the said party of the second part shall execute and deliver, within thirty days

after demanded, a full discharge, satisfaction and release of the party of the first part from all the terms and obligations of this lease and option to purchase and all the obligations thereof.''

The complaint alleged 'the execution and recordation of the lease and its subsequent assignment to defendant, and then alleged that the lessee and his successors and assigns failed to commence drilling operations on the Rocky Ridge Dome ''on or before March 19, 1921, and did further fail to prosecute said operations diligently thereafter,'' *etc.*, and that by reason of said failure ''the said lease became, and was, forfeited''; that the defendant neglected and refused for sixty days after such forfeiture to have the lease released of record and does still neglect and refuse so to do, and by reason of such neglect and refusal plaintiff was prevented from making a new lease or otherwise disposing of the premises, to plaintiff's damage in the sum of $16,000. The complaint then alleged that written demand to clear the record of said lease was served upon defendant on August 18, 1922. This complaint was filed October 7, 1922.

The answer, in addition to denials, pleaded performance of the terms and conditions of the lease, and waiver and estoppel, which pleas were met by a reply.

The action was brought under the provisions of sections 6902, 6903 and 6904, Revised Codes of 1921, which authorize the institution of an action for damages for failure to clear the record of a lease which has been forfeited, after written demand to do so. Section 6903 provides that in such an action the plaintiff, having complied with the directions of these sections, may recover from the defendant the sum of $100 damages and '' * * * any additional damages that the evidence in the case will warrant.''

On the first trial the district court held the action to be in equity, and on that theory discharged the jury and rendered judgment for defendant. An appeal was taken, and, in reversing the judgment, this court declared that the primary object of the above statutes was ''to penalize the lessee for a

failure to clear the record after forfeiture of the lease," and
"was intended by the lawmakers as a legal remedy," and ac-
cordingly held that the case was an action at law in which
the plaintiff was entitled to a jury trial. (*Solberg* v. *Sunburst
Oil & Gas Co.*, 70 Mont. 177, 225 Pac. 612.)   On a retrial the
trial court rendered and caused to be entered a judgment of
nonsuit, on the theory that no forfeiture was shown, and, on
appeal from this judgment, we again reversed the trial court,
for the reason that, whereas the lease required the lessee to
"commence drilling operations" on or before March 19, 1921,
plaintiff's proof established the fact that the test well was not
"spudded in" until April 14, 1921, and that, by the language
employed in the contract, the lessees agreed, within a specified
time, "to commence drilling operations for oil and continue to
a maximum depth of 2,500 feet," the performance of which con-
ditions could not be accomplished by placing timbers and ma-
terial upon the ground, but only by the operation of a drill
in the ground.   We therefore held that a showing that the first
entry of the drill in the ground on April 14, 1921, made out
a *prima facie* case of default and forfeiture.   In the opinion
we called attention to the fact that plaintiff had pleaded general
damages only, and that "there was no proof or offered evidence
that the plaintiff could have leased the lands to any other per-
son, nor that he had suffered any special damage in consequence
of defendants' failure to discharge the lease of record." (*Sol-
berg* v. *Sunburst Oil & Gas Co.*, 73 Mont. 94, 235 Pac. 761.)

The cause was again remanded for a new trial, and came on
for hearing on July 8, 1925, at which time plaintiff was granted
leave to amend the complaint by substituting, for the former
allegation of damages, the following: "That if the defendant
Sunburst Oil & Gas Company had released said lease of record
within twenty (20) days after said written demand for re-
lease, plaintiff could, and would, have sold an oil and gas lease
on the said premises above described; and that, by reason of
defendant's neglect and refusal to release the said oil and gas
lease from the record, all prospective purchasers of oil and
gas leases on said premises were dissuaded and prevented from

purchasing an oil and gas lease thereon, and refused and still refuse to purchase the same; that the plaintiff, by reason of said neglect and refusal of the defendant, * * * has been unable to sell an oil and gas lease on said land, and has been injured * * * in the sum of $16,000.''

To the complaint as amended, defendant demurred on the ground that the allegations contained in the amendment were indefinite and uncertain, in that they failed to disclose to whom, if anyone, plaintiff could or would have sold a lease or for what amount, or under what circumstances such a sale could have been made, and do not disclose in what manner plaintiff suffered special damages. This demurrer was overruled. Defendant asked leave to file a supplemental answer showing that, in July, 1923, the lands in question were sold on foreclosure of the mortgage thereon and were not thereafter redeemed, which leave was denied.

The cause was finally submitted to the jury and a verdict for plaintiff in the sum of $5,980 was rendered, and judgment thereon duly entered. Defendant moved for a new trial, which motion was denied, and thereafter defendant appealed from the judgment.

Defendant has made numerous assignments of error, which, however, are not argued in the usual manner; instead, counsel have discussed generally the law and the evidence with reference to the defendant's position and contentions herein, and as each point is made, assert its applicability to certain assignments or groups of assignments. The questions thus presented will sufficiently appear in this opinion without their statement at this time.

1. As it is not expressly provided by the terms of the contract [1] under consideration that time shall be considered of the essence of the contract, and counsel for the defendant contend that forfeitures are frowned upon by the law, and that a lease should be strictly construed against the lessor, it first becomes necessary to determine what rules of construction should be followed as to these matters.

Oil and gas leases differ from the ordinary and well-known forms of leases in existence and heretofore construed in this state, such as leases on city property and agricultural and grazing lands, in that, in the latter classes of leases, valuable property rights are at once acquired by the lessee and immediate possession usually yielded by the lessor, and the occupancy by the lessee either improves, or at least does not materially injure, the leased premises; he gets no right to take away any part of the soil, and during the term of the lease, in the absence of extraordinary circumstances, the value of the property remains reasonably stable, while, on the other hand, no particular value attaches to an oil and gas lease until after development and the production of oil or gas in paying quantities. The holding of a lease for this latter purpose, without prospecting or operating, inures only to the benefit of the lessee as a speculator, and possession of the premises is not usually yielded at once, and, when yielded, the lessor usually retains possession of the larger part of the surface ground. When the lessee finally takes possession and commences operations, the lessor's lands may be riddled with holes and cluttered with derricks and other paraphernalia of the business, to the great detriment of the lessor and damage to the property, if oil or gas be not discovered. If oil or gas is discovered, the lessee carries away a valuable part of the real estate itself. (Thornton on Oil and Gas, p. 152.) Again, the value of property declared in such a lease, is subject to violent fluctuations, and any substantial delay, either in commencing drilling operations or in prosecuting such operations thereafter with diligence, may render land, theretofore extremely valuable for its potential oil and gas rights, absolutely valueless.

So, also, where a lessee has failed to comply with the terms of a lease in promptly commencing drilling operations within the time specified and the lease has thereby become forfeited, a delay in clearing the record of the forfeited lease may, by reason of the fact that, in such interim, a field with bright prospects is proven barren, deprive the owner of the land of the opportunity to make an advantageous sale of a lease upon his

premises. "Perhaps in no other business is prompt performance of contracts so essential to the rights of the parties, or delay by one party likely to prove so injurious to the other." (*Munroe* v. *Armstrong,* 96 Pa. 307.)

For these reasons many of the well-known rules of construction of contracts have, in case of oil and gas leases, been modified to meet the new conditions arising by reason of the new industry, and such modification is necessary for the protection of the interests of the land owner and of the public generally.

The lease under consideration requires the lessee to do nothing; it merely gives him the option to prospect the leased premises within a given time, provided he first prospects the field as provided in the lease, or to forfeit the lease by failure to perform either of these conditions; it is merely an optional contract, and, in conformity with the trend of modern authority generally, and for the reasons above stated, we have heretofore held that in such a contract time is of the essence of the contract, though its terms do not so provide (*Thomas* v. *Standard Dev. Co.,* 70 Mont. 156, 224 Pac. 870), and that the provisions of such a lease are to be liberally construed in favor of the lessor (*Daley* v. *Torrey,* 69 Mont. 599, 223 Pac. 498; *Thomas* v. *Standard Dev. Co.,* above; *McDaniel* v. *Hager-Stevenson Oil Co.,* 75 Mont. 356, 243 Pac. 582). See, also, with reference to analogous contracts on mining property: *Clark* v. *American Dev. Co.,* 28 Mont. 468, 72 Pac. 978, *Merk* v. *Bowery Min. Co.,* 31 Mont. 298, 78 Pac. 519, and *Snider* v. *Yarbrough,* 43 Mont. 203, 115 Pac. 411.

Compliance with the covenant to commence drilling operations within the time stated is in the nature of a condition precedent to the accruing of rights in the lessee (Thornton on Oil & Gas, sec. 56; *Loveland* v. *Longhenry,* 145 Wis. 60, 140 Am. St. Rep. 1068, 129 N. W. 650), and failure in this regard authorizes the lessor to declare a forfeiture (*Potter* v. *Gilbert,* 177 Pa. 159, 35 L. R. A. 580, 35 Atl. 597; *Chauvenet* v. *Person,* 217 Pa. 464, 11 L. R. A. (n. s.) 417, 66 Atl. 855; *Rorer Iron Co.* v. *Trout,* 83 Va. 397, 5 Am. St. Rep. 285, 2 S. E. 713;

*Zelleken* v. *Lynch,* 80 Kan. 746, 46 L. R. A. (n. s.) 659, 104 Pac. 563).

For the reasons stated, we are now constrained to hold that, [3] while, in the case of an ordinary lease such as is mentioned above, we have heretofore held that a forfeiture is frowned upon (*Finley* v. *School District,* 51 Mont. 411, 153 Pac. 1010; *Smith* v. *Hoffman,* 56 Mont. 299, 181 Pac. 842), and while section 7408, Revised Codes of 1921, provides that "a condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created," in the case of oil and gas leases, forfeiture is not looked upon with disfavor, but is rather favored where it clearly appears that the lessee has failed or neglected to commence operations within the time specified in the lease, or thereafter to prosecute such operations with diligence. This reversal of the rule to meet the new conditions arising in this state is supported by the weight of authority and is based upon reason and justice. (1 Thornton on Oil & Gas, p. 512; *Brown* v. *Vandergrift,* 80 Pa. 142; *Dinsmoor* v. *Combs,* 177 Ky. 740, 198 S. W. 58; *Soaper* v. *King,* 167 Ky. 121, 180 S. W. 46; *Culbertson* v. *Iola Portland Cement Co.,* 87 Kan. 529, 125 Pac. 81; *Beatty Oil Co.* v. *Blandon* (D. C.), 245 Fed. 979; *Munsey* v. *Marnet Oil & Gas Co.* (Tex. Civ. App.), 199 S. W. 686.)

2. Directly, by offered instruction 22A, and, in effect, by several other offered instructions, the defendant requested the court to direct the jury to return a verdict in its favor. In support of assignments based on the court's refusal to give these instructions, counsel contend that the complaint herein does not state a cause of action, in that it does not show a notice of forfeiture given prior to the written notice to clear the record, and that, if the written notice can be considered as a notice of forfeiture, the complaint shows on its face that the action was prematurely commenced.

Section 6902, referred to above, provides that: "When any oil, gas, or other mineral lease   *   *   *   shall become forfeited, it shall be the duty of the lessee, his successors or assigns, within sixty days   *   *   *   from the date of the forfeiture   *   *   *

to have such lease released from record," *etc.* While a duty is thus imposed upon the lessee, the lessor is required by the provisions of section 6904 to make written demand upon the lessee "at least twenty days before bringing the action." Defendant asserts that under the terms of the lease its conditions were not self-executing, and notice of forfeiture was necessary before a forfeiture was effected, and that, under the statutes quoted, defendant had eighty days within which to release the lease of record, which entire time must elapse before plaintiff could commence his action.

We are not now called upon to determine whether this con-[4, 5]   tention has merit, for it is already foreclosed against the defendant. As stated by defendant's counsel in their brief: "The evidence on the part of the respondent was practically identical with the evidence introduced at the first and second trials." As heretofore shown, on both the first and the second trial judgment was entered in favor of the defendant, and from each of those judgments the plaintiff appealed; on each appeal the defendant contended that the complaint did not state facts sufficient to constitute a cause of action, and in each opinion heretofore handed down on those appeals, this court held that the trial court erred in taking the case from the jury. In the second opinion referred to above we stated, "The complaint alleged a forfeiture of rights under the lease," which statement was necessary to a decision that the trial court was in error, for, had the complaint not been considered sufficient to state a cause of action, the trial court could not have been put in error for taking the case from the jury on a motion for judgment of nonsuit, which included, as one of the grounds therefor, the insufficiency of the complaint. A judgment is an adjudication, not merely of the conclusions expressed, but of everything necessarily included therein or necessary thereto (sec. 10561, Rev. Codes 1921; *Lyon* v. *United States F. & G. Co.,* 48 Mont. 591, Ann. Cas. 1915D, 1036, 140 Pac. 86; *State ex rel. Golden Valley County* v. *District Court,* 75 Mont. 122, 242 Pac. 421), and where the testimony on a retrial is substantially the same as upon the former trial, the former opinion established the

law of the case and the trial court cannot be put in error for following the directions contained therein (*Easterly* v. *Jackson*, 36 Mont. 205, 92 Pac. 480; *Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226).

Whether the Solberg lease falls into that class of cases which are *ipso facto* terminated by default, or in the class requiring some notice of forfeiture, is not now before us for decision. In passing, we merely call attention to the fact that the Solberg lease differs in many important particulars from the "Day lease" considered in the case of *McDaniel* v. *Hager-Stevenson Oil Co.*, above.

3. By its offered instruction 13A, defendant requested the court to instruct the jury that the plaintiff, on default of the lessee, might either declare a forfeiture of the lease, or he might waive the default, either expressly or by his conduct, and that, "to entitle him to the benefit of such provisions, he was required to promptly notify said Gordon Campbell, or his assigns, in writing, of the fact that he asserted the forfeiture of said lease," and further that: "If he did [not?] so promptly assert the right of forfeiture, and either Gordon Campbell or his assigns, before a demand in writing was made upon either of them, completed a well upon the Rocky Ridge Dome, then the plaintiff lost the right to assert a forfeiture, and, since it is admitted that the defendant, Sunburst Oil & Gas Company, and L. C. Stevenson completed a well on said structure on the 5th day of June, 1922, in which oil in paying quantities was discovered, and the plaintiff did not give notice in writing until August 18, 1922, to said defendant that said lease was forfeited, he waived the right to assert such forfeiture, and your verdict must be in favor of the defendant."

By offered instruction 14A, the defendant requested the court to instruct the jury that: "Whether or not plaintiff knew or did not know the fact, if it be a fact that, on or before the 19th day of March, 1921, Gordon Campbell had not spudded in a well on the Rocky Ridge Dome is not material. If he intended to assert or claim a forfeiture of the lease involved herein, * * * it was the duty of the plaintiff to ascertain

the right of forfeiture and to assert such right promptly; otherwise Campbell was justified in assuming that the plaintiff did not intend to claim a forfeiture * * * and was justified in proceeding with the work as if he had not failed to perform any of the conditions of the said lease, and, since Campbell assigned said lease to said Stevenson, and thereafter Stevenson assigned the same to the defendant * * * before said plaintiff claimed or asserted a forfeiture, said plaintiff cannot now be heard to say that said lease should be forfeited."

Offered instruction No. 15A would have advised the jury that, by reason of his failure until August 18, 1922, to assert or claim a forfeiture, plaintiff did not act with the promptness and diligence required by law, and thereby waived his right to declare a forfeiture.

These instructions were refused by the court, and error is predicated upon this refusal.

Primarily, offered instruction No. 13A is erroneous, in that [6] it would require of the plaintiff a notice in writing of his intention to declare a forfeiture; neither the law nor the contract between the parties required such a notice. The only notice required by the statute under which this action was brought is a written notice to clear the record of a forfeited lease, and section 6904, requiring this notice, presupposes that all necessary steps for the accomplishment of the forfeiture have already been taken. The only provision in the lease for a demand refers also to the clearing of the records and not to the termination of the lease, and, by the terms of the lease, this demand is not required to be in writing. If, therefore, a notice of forfeiture was required at all, an oral notice would suffice. (*Towel* v. *Fluharty,* 110 Kan. 260, 203 Pac. 703.)

Offered instruction No. 14A assumes that knowledge of de- [7-9] fault is not necessary to the accomplishment of a waiver, and would have advised the jury that the plaintiff was in duty bound to ascertain whether the lessee was in default, and that, if he did not ascertain such fact, yet delayed to give notice of forfeiture, he would be held to have waived the default. Such is not the law with respect to waiver. A

waiver consists of the relinquishment of a known right, and, while a waiver may be implied by the conduct of him against whom it is alleged, the circumstances must be such as to furnish a basis for an inference of knowledge and intention to forego the right which might have been asserted. (*Enterprise Sheet Metal Works* v. *Schendel,* 55 Mont. 42, 173 Pac. 1059; *Osborne* v. *Supreme Lodge, K. of P.,* 69 Mont. 361, 222 Pac. 456.)

By instruction 13A, the defendant seeks to take advantage of the fact that it drilled a well to production within the dome, in June, 1922. The record discloses that, while Campbell's default in failing to commence drilling operations occurred in March, 1921, the well referred to was not commenced until May 1, 1922, and while Campbell and Stevenson had some sort of secret or informal agreement concerning the Solberg and other leases within the field as early as April, 1921, the Solberg lease was not assigned to Stevenson until May, 1922, and by him to defendant company on June 28, 1922, and even if the drilling of this latter well could be said to have been in reliance upon the Solberg lease, the plaintiff could not possibly be chargeable with knowledge of such fact.

Again, these three offered instructions seek to have the jury advised that the plaintiff waived default by failure to act promptly for the purpose of preventing the lessee from proceeding under the lease at great expense. If the lessee had been drilling upon plaintiff's property, a failure to act promptly upon discovery of the default would raise a presumption of acquiescence or waiver of his rights (Morrison on Oil Rights, pp. 120–121; *Wortman* v. *Montana Central Ry. Co.,* 22 Mont. 266, 56 Pac. 316), but it must be remembered that whatever activities Campbell and his successors were engaged in were prosecuted, not for any direct benefit to plaintiff or to his lands, but for the purpose of proving or developing a "wild cat" field on the lands of which they had many leases in addition to that on plaintiff's land, and plaintiff could not be charged with knowledge that a forfeiture of the lease on his tract would in any manner affect the activities of the lessee.

While failure to object to continued operations upon his own land might estop a lessor from later asserting a forfeiture, such failure to object to operations upon land near his own, under such circumstances as are here disclosed, cannot possibly have that effect.    (21 C. J. 1165.)

All that the record discloses, therefore, if defendant's contention as voiced in these instructions is correct, is that plaintiff remained silent at a time when he was under no duty to speak. While silence may constitute the basis of an estoppel [10] if there is a duty to speak, it has no effect either as an estoppel or waiver in the absence of such a duty. (Thornton on Oil & Gas, 4th ed., sec. 181, and cases there cited; *Moore* v. *Sherman,* 52 Mont. 542, 159 Pac. 966.)

But, aside from these technical reasons why no error was committed in refusing the offered instructions quoted, on the [11] question of waiver, the plaintiff testified in rebuttal and on the question of waiver that immediately after the default in failure to commence drilling operations on or before March 19, 1921, or between that date and March 27, 1921, he demanded of Campbell a return of his lease on the ground that Campbell had not commenced such operations prior to March 19. He made a like demand upon Campbell between the 15th of June and the 1st of July of that year. This testimony was not disputed. He further testified that he made a like demand upon Stevenson between May 15 and May 31, 1922, after he was advised by Campbell that his lease had been assigned to Stevenson. This statement was denied by Stevenson, however. This evidence shows sufficient notice of forfeiture, if such notice was necessary (*Towel* v. *Fluharty,* above), and effectively precluded the court from peremptorily instructing the jury that plaintiff had waived his right to declare a forfeiture, and, therefore, had the instructions correctly stated the law of waiver, no error was committed in refusing to give the offered instructions.

What is here said disposes also of defendant's offered instruction No. 24A, by which defendant sought to have the jury

instructed that they should find for the defendant, if they found that the plaintiff had not acted promptly in declaring a forfeiture.

4. The defendant contends that the court erred in giving instruction numbered 3, by which the court advised the jury that a verdict should be returned for the plaintiff if the jury found from a preponderance of the evidence that defendant's predecessors in interest failed to commence drilling operations on the dome on or before March 19, 1921, or failed to prosecute such operations diligently, as required, and closed the instruction as follows: ''Unless you further find from a preponderance of the evidence that the plaintiff, by his acts, declarations, or omissions, has waived his right to declare a forfeiture of the said lease or has estopped himself from declaring such forfeiture. The terms 'waiver' and 'estoppel' are hereinafter defined.''

Defendant's complaint to this instruction is that the clause quoted does not advise the jury that plaintiff must have acted ''promptly'' in declaring a forfeiture. This contention has already been disposed of. The instruction stated the law, and the giving thereof did not constitute error.

5. As the plaintiff clearly established a forfeiture of the lease in question by failure to commence drilling operations [12] within time, and the record discloses neither a waiver nor an estoppel, it is immaterial whether the lessee thereafter prosecuted the drilling of one or more test wells in the field with diligence or not. Having forfeited the lease in March, 1921, it became the duty of the lessee to release the lease of record within sixty days thereafter, and its failure so to do entitled plaintiff to prosecute this action at any time after the lapse of twenty days next succeeding the service of the written demand to clear the record, and it is not, therefore, necessary to consider the evidence or the offered instructions refused with respect to the operations of the defendant subsequent to the spring or early summer of 1921. Again, it should be borne in mind that none of these operations were prose-

cuted upon the lands of plaintiff, and that he could not be held chargeable with knowledge that they had any more than a remote connection with this lease.

6. Several assignments of error are grouped together' under a discussion of the question of damages; these relate to the court's action in overruling defendant's demurrer to the amended complaint, to the admission of evidence and the sufficiency thereof, and to the court's instruction as to the measure of damages.

(a) The amendment to the complaint with respect to damages is set out above. In support of these allegations the plaintiff testified that, had it not been for the failure of the defendant to release the lease of record, he "could" have sold a lease upon the premises and "would" have done so and paid off the mortgage on the land. He did not testify that he had secured a purchaser ready, willing and able to pay the market value of such a lease, which he fixed at twenty-five dollars per acre in the month of September, 1922, or immediately after the lessee was required to clear the record, but on the contrary testified that, by reason of the fact that the lease in question was not canceled of record, no purchaser would consider a lease upon his premises. He further testified that he knew what he could have sold such a lease for, and that there has since been no market for such a lease.

Upon cross-examination, the plaintiff stated that he knew of a number of sales of leases, but his testimony was vague and indefinite as to dates, names and amounts. He stated that he had a second tract in the field, but had not attempted to lease it, as "it was not on the market." He further admitted on cross-examination that he lost his land by foreclosure of the mortgage thereon, in July, 1923, and did not redeem it. On redirect examination, he explained that he did not redeem the property because he did not have the money, and could not get it because of the cloud caused by the lease of record.

(b) One Bruce McNamer testified that he was a real estate dealer, and dealt in oil and gas leases and knew the market

value of a lease upon plaintiff's land in the month of September, 1922. Asked what that was, he stated, "$25 per acre bonus." He then testified that a lease upon the land in September, 1923, would have a value not to exceed one dollar per acre. On cross-examination, this witness admitted that he knew of no deals being consummated in the field for leases in September, 1922, and that "there was no lease changed hands, at these dates." All of this evidence went in over the objection of the defendant.

(c) The question of damages was covered by instruction numbered 8, which reads: "You are instructed by the court that, if you find your verdict for the plaintiff, you shall award him damages in the sum of $100, and you may award him any additional damages that the evidence in this case will warrant. In this connection the court instructs you that, if you find from the preponderance of the evidence that the said oil and gas lease was forfeited and the plaintiff was entitled to a release thereof, the plaintiff could, and would, have sold an oil and gas lease on the said premises described in the complaint, had the defendant's lease been released of record, and that, by reason of defendant's wrongful neglect and refusal to release the said oil and gas lease from record, plaintiff was prevented from selling such oil and gas lease and thereby has been damaged, the measure of damages in such case would be the difference, if any, between the price at which the plaintiff could and would have sold an oil and gas lease on said premises described in the complaint herein, and the present market value of such an oil and gas lease."

The defendant contends that the court erred in overruling its demurrer to the amended complaint, in the admission of the above evidence, and in so instructing the jury, on a misconception of the law of damages applicable to an action such as this.

It is asserted by counsel for defendant that the rules of pleading and proof governing actions for damages for slander of [13] title should have been applied. Such an action lies

only where special damages are suffered, and, as these special damages are ''the gist and heart of the action,'' a peculiar strictness governs in respect to the pleading and evidence; it is not sufficient to allege and prove that the plaintiff has been prevented from making a sale, but it must be both alleged and proved that the injured party had a buyer ready and willing and able to purchase the property at a given price, stating the name of the prospective buyer and the proposed selling price, and that the sale would have been consummated but for the wrongful act of the defendant. (*Griffin* v. *Isbell,* 17 Ala. 186; *Stevenson* v. *Love* (C. C.), 106 Fed. 466; *Burkett* v. *Griffin,* 90 Cal. 532, 25 Am. St. Rep. 151, 13 A. L. R. 707, 27 Pac. 527; *Hill* v. *Ward,* 13 Ala. 310; *Arnold* v. *Oil Co.* (Tex. Civ. App.), 196 S. W. 735; *Wilson* v. *Dubois,* 35 Minn. 471, 59 Am. Rep. 335, 29 N. W. 68.)

However, an action for slander of title lies only against one who falsely and maliciously denies or impugns plaintiff's title to property, or where one unnecessarily intermeddles with the affairs of another with which he is wholly unconcerned. (Odgers on Slander and Libel, 2d ed., p. 139.)   Such an action lies where one maliciously makes a matter of record a void instrument affecting title to property and special damages arise therefrom.   (*Vaught* v. *Pettijohn,* 104 Kan. 174, 178 Pac. 623; *Kelly* v. *First State Bank,* 145 Minn. 331, 9 A. L. R. 929; 177 N. W. 347.)

In order to constitute slander of title, it is essential that there be a publication.   (*Arnold* v. *Oil Co.,* above; *Potosi Zinc Co.* v. *Mahoney,* 36 Nev. 390, 135 Pac. 1078; *Coffman* v. *Henderson,* 9 Ala. App. 553, 63 South. 808; *Schoen* v. *Casualty Co.,* 147 Ga. 151, 93 S. E. 82.)

The distinction between the fact conditions giving rise to an action for slander of title and those presented in the case at bar is clear.   While the recording of the lease in question was a publication to all the world that the lease was valid at the time it was recorded and the representation thus made as to the title was true, the wrongful conduct of defendant consisted,

not in a publication which was false, but in its omission to publish a declaration clearing the record of a valid instrument which had become no longer binding. Such omission cannot be said to be a "publication," (*Barquin* v. *Hall*, 28 Wyo. 164, 201 Pac. 352, 202 Pac. 1107.) It is not charged that defendant maliciously refused to clear the record, and the record clearly establishes the fact that, not only does the plaintiff not charge that the refusal of the defendant to discharge the lease of record was malicious, as was done in *Michie* v. *McGehee*, 27 Tex. 135, which might give rise to some color of claim that the action was in the nature of an action for slander of title, but that, after the only default which we are here called upon to consider, Campbell refused to return the lease because of an honest, though mistaken, belief that the lease had not been forfeited, which position was strenuously contended for on the second appeal of this case. The action, then, has none of the attributes of an action for slander of title, and the rigorous rules laid down in such actions have no application.

By its failure to clear the record, the defendant prevented [14] the plaintiff from offering to prospective purchasers of leases on lands within the Rocky Ridge Dome a good title to a lease upon his premises; a good title being one "free from litigation, palpable defects, and grave doubts, comprising both legal and equitable titles, and fairly deducible of record." (*Ogg* v. *Herman*, 71 Mont. 10, 227 Pac. 476.) The evidence discloses the fact that, under the condition of the record, it was impossible for plaintiff to have secured a purchaser of such a lease. It is true that he might have secured a statement from some dealer in such leases that, were it not for the cloud upon the title, he would pay a sum certain for such a lease, but it was not necessary for plaintiff to do so. (*Dixon* v. *McCann*, 87 Okl. 109, 206 Pac. 597.) Having shown that by the failure of defendant he was prevented from placing his property on the market, the measure of damages was properly stated in the instruction quoted, *i. e.*, the difference between what plaintiff could and would have sold for, or, in other

words, the fair market value of such a lease, at a time when the record should have been clear, and the market value of such a lease at the time of trial. (*Mollohan* v. *Patton*, 110 Kan. 663–667, 202 Pac. 616, 205 Pac. 643; *Timm* v. *White*, 28 N. M. 59, 205 Pac. 896; *Humble Oil Co.* v. *Kishi* (Tex. Civ. App. 1925), 276 S. W. 190; *Gulf etc., Ry. Co.* v. *Cusenberry*, 86 Tex. 529, 26 S. W. 43.)

Defendant contends that the damages should have been confined to those suffered at the time of the commencement of the action; but this is a tort action, and the rule declared in actions in conversion and similar cases, that plaintiff may recover the highest market value at any time up to the time of trial, is, by analogy, applicable.

From what has been said above, it is apparent that, while [15] the plaintiff was required to plead special damages in order to recover therefor (*Solberg* v. *Sunburst Oil Co., supra*), he was not required to set out in his complaint to whom or for what price he could have sold a lease, and the amendment to the complaint, stating, as it does, in what manner plaintiff suffered special damages, pleaded the issuable and ultimate facts (*Knowles* v. *Gee*, 4 How. Prac. [N. Y.] 317; *Sutor* v. *Wood*, 76 Tex. 403, 13 S. W. 321), and was sufficient.

(d) The evidence above outlined is meager, but the state- [16] ments made are statements of fact and constitute some substantial evidence on the market value of the lease which might have been sold had it not been for the failure of the defendant company to clear the record. We have already held that this evidence was competent and should have been admitted. (*Solberg* v. *Sunburst Oil & Gas Co., supra*.) McNamer qualified as an expert, and gave his opinion as to such value at a specified time; it is true that he thereafter on cross-examination admitted that no leases were taken in the field during the period covered by his testimony, but such admission affected only the weight to be given to his testimony, and not its admissibility.

A verdict based upon substantial evidence, which could have been accepted as credible by the jury, is binding upon this court, even though such evidence may appear to us as inherently weak. (*Williams* v. *Thomas,* 58 Mont. 576, 194 Pac. 500; *Harrington* v. *Mutual Life Ins. Co.,* 59 Mont. 261, 195 Pac. 1107; *In re Carroll's Estate,* 59 Mont. 403, 196 Pac. 996.)

7. From what has been said, it is manifest that the instruction as to damages, as quoted above, correctly stated the law applicable to this case.

8. Defendant next contends that, as plaintiff admitted that the land in question was sold on foreclosure sale, after the action was commenced and after the first trial thereof, and the period of redemption expired prior to this last trial, the action should abate or plaintiff should not be permitted to recover damages. There is no merit in this contention. Under the circumstances, it was immaterial whether the plaintiff conveyed his lands by voluntary or involuntary sale after the institution of this action; such fact would not defeat the action. (*Barstow* v. *Newman,* 34 Cal. 90; *Moss* v. *Shear,* 30 Cal. 467.) Under the provisions of section 9086, Revised Codes of 1921, the action could either proceed in the name of the original party, or the person to whom the transfer was made could be substituted if the case had been one in which the transfer would affect the plaintiff's right, but in this case the fact that plaintiff lost his property, through the failure and refusal of defendant to clear the record, would not defeat plaintiff's right of action for damages, but rather furnish additional reason why damages should be awarded.

9. Defendant asserts that it accepted an assignment of the lease prior to any declaration of a default or forfeiture, and thereafter, in reliance upon the lease, in good faith proceeded to expend large sums of money in testing the field and should not therefore be mulcted in damages. This assertion must be considered as based upon defendant's claim of waiver or estoppel heretofore disposed of, for the record discloses that the lease was transferred to the defendant long after

Campbell's default in failing to commence drilling operations within the dome on or before March 19, 1921. It further appears from the record, as heretofore pointed out, that notice of default and forfeiture was given to Campbell immediately after such default. Having defaulted as to a material condition of the lease entitling the plaintiff to a discharge of the lease of record, no amount of diligence or good faith in attempting to carry out further provisions of the contract would restore life to the dead lease, and it was immaterial whether such new activities were carried on by the original lessee or his assigns. "If a lease provides for a forfeiture under certain conditions, the assignee must, at his peril, ascertain whether or not a forfeiture has been incurred." (Thornton on Oil & Gas, sec. 220, and cases there cited.)

No substantial error appearing in the record, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.