No. 23,414.

FANNIE L. TOWEL, *Appellee*, v. O. E. FLUHARTY, *Appellant*.

SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Modified by Subsequent Agreements.* An oil and gas lease is held to have been modified by subsequent agreements and all are to be considered together in determining the rights of the parties.
2. SAME — *Subsequent Agreements — Consideration Therefor — Forfeiture of Lease.* The subsequent agreements are held to have been based on adequate consideration, and the failure of the lessee to comply with the agreements is held to be sufficient ground for adjudging a forfeiture of the lease.
3. SAME—*Notice of Termination of Lease.* Sufficient notice of the termination of the lease is held to have been given by the lessor.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed January 7, 1922. Affirmed.

*John W. Brown,* and *Kenneth H. Foust,* both of Iola, for the appellant.
*Travis Morse, L. T. Cannon,* both of Iola, and *P. C. Simons,* of Enid, Okla., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action an oil and gas lease given by plaintiff to defendant was canceled and from the judgment defendant appeals.

The controversy involves the consideration of three agreements between the parties, one of which is designated as a lease, which was executed on June 1, 1918, by which the plaintiff let a tract of land to defendant for the purpose of mining for oil and gas for a period of five years and as much longer as oil and gas could be profitably produced by the defendant. The consideration for the lease was $900, which is designated as a bonus and the rental for one year. The defendant was to pay plaintiff a royalty of one-eighth of the oil produced and certain cash payments in case gas was found. It contained a provision that if no well was commenced before June 1, 1919, the failure would operate as a termination of the lease unless the defendant paid the sum of $220, which would operate as a rental and cover the privilege of deferring the commencement of a well for the succeeding year, and that like postponements might be secured

thereafter by the annual payments of rentals of that amount. There were other provisions in the lease which are not material in this controversy.

On the same day and immediately after the execution of the lease another agreement relating to the same property was made between the parties, called the drilling contract. It stipulated as a part of the consideration of the lease mentioned, that the defendant should commence a test well upon the tract within ninety days from the date thereof, and carry on the drilling until the completion of the test well, unavoidable accidents and delays excepted, and that if the defendant failed to put down the test well within that time, the plaintiff might at her option declare the lease at an end, in which event all rights under the lease should terminate. No test well was commenced within the time stipulated and upon June 14, 1919, a third agreement was made which recited that as defendant had been unavoidably prevented from carrying out the contract on account of being called into the military service, it was agreed that the lease should be reinstated and renewed upon condition that the defendant should complete a test well for oil and gas within sixty days from June 14, 1919. There was no compliance with the extension agreement, and the plaintiff refused to make further extensions. On October 2, 1919, this action was brought by plaintiff for the cancellation of the lease and to quiet her title against the defendant. because of the breach of the drilling and extension agreements.

It appears that prior to the time the extension agreement was made, the defendant paid and the plaintiff received a payment of the rental of $220, and he contends that this operated as a waiver of his failure of performance; and it is further contended that there was no consideration for the extension agreement and therefore no ground for the cancellation of the lease.

The lease first drawn cannot be treated as an independent contract. It was modified first by the drilling contract, and later by the extension agreement. All of these stipulations must be considered together. While the first stipulated that the drilling of wells might be postponed by the payment of rental, it was modified by the second, which specifically provided that a test well should be begun within ninety days, and that the failure to drill one would be a ground for terminating the lease. But for the second and supplemental contract the payment of rentals would have excused the failure to develop the land during the five-year period. The parties,

however, chose to modify the lease in respect to development by agreeing that the drilling of a test well should be begun within ninety days and that a default would give plaintiff the option to terminate the lease. Although the defendant failed to comply with this stipulation, plaintiff did not choose to declare a forfeiture, but later was induced to enter into the extension agreement. This agreement served to excuse the previous default, but coupled with the reinstatement of defendant's rights was the agreement that a test well should be completed within sixty days after the agreement was made. This plain limitation was made a part of their contract. There is no claim of fraud or mistake in making it. The payment of rentals that had been made was not to relieve from the drilling of a test well under either the supplemental or extension agreements, and evidently in order to get the extension agreement the last payment of rent was made. From the recital in the extension agreement the call of the defendant to military service was treated as an excuse for his previous failure to drill a test well, and if the contract had not been renewed the plaintiff might have had some difficulty in enforcing a forfeiture. In the last agreement the time to complete the well was fixed and compliance with this stipulation was necessary to the protection of defendant's rights. The previous payment of rental did not excuse the defendant's failure to complete the test well at the time prescribed in the extension agreement.

It is contended that there was a lack of consideration for both the supplemental and extension agreements. The supplemental agreement is to be regarded as a part of the original lease and the consideration for the first is adequate for the second. There is abundant consideration for the extension agreement in the mutual promises of the parties and the advantages and inconveniences stipulated for in the renewal of the lease.

Some contention is made that notice of the termination of the lease was not given by the plaintiff. There is testimony to the effect that she refused to grant further extensions after defendant's final failure and told him that she considered the lease at an end. This was practically admitted by the defendant, and there is no substantial ground for holding that there was a lack of notice.

An examination of the evidence, in which there is but little conflict, satisfies us that the court reached a correct conclusion when it held that the rights of defendant under the lease had been forfeited.

Judgment affirmed.