**FRANKLIN v. EMPIRE GAS & FUEL CO.**

No. 13608.   Opinion Filed Feb. 19, 1929.

Rehearing Denied Oct. 1, 1929.

P. J. Carey, for plaintiff in error.

H. O. Caster, Hayes McCoy and S. N. Hawkes, for defendant in error.

JEFFREY, C. This appeal involves the construction of an extension agreement to an oil and gas lease. Wirt Franklin, as plaintiff, brought suit against the Empire Gas & Fuel Co., James H. Miller, and Emma Miller, his wife, for an undivided one-half interest in and to all oil and gas mineral rights, including both working interest and royalty in and to the north half of the northeast quarter of section 5, township 2 south, and range 8 west, Stephens county, Okla. The suit was dismissed as to the defendants, James H. Miller and Emma Miller, and a general demurrer on behalf of the other defendant to plaintiff's petition was sustained. Plaintiff elected to stand on his petition, and the cause was dismissed, from which judgment plaintiff has appealed.

Plaintiff''s petition alleged his ownership of an undivided one-half interest in and to said land by warranty deed from James H. Miller and wife of date April 9, 1920; That on February 10, 1915, Miller who was then owner of said land, executed an oil and gas lease to R. M. Conway; and on February 1, 1918, Conway assigned said lease to the defendant, the Empire Gas & Fuel Co., who was still in possession and claiming the entire working interest in the oil and gas mining rights. The petition further alleged that on January 14, 1920, before said lease was to expire by its terms on February 10, 1920, James H. Miller and wife executed an extension agreement in favor of the defendant, which merely extended the time or term and left all other provisions of the original lease, including the provision for the payment of a rental every three months, in order to keep said lease from lapsing, in full force. Copies of the original oil and gas lease, assignment and extension agreement were attached to the petition. The lease was for a term of five years, and as long thereafter as oil and gas or either of them is produced from said land by the lessee, and in other particulars is in the usual form. That part of the lease about which a controversy has arisen in connection with the extension agreement is as follows:

"If no well be completed on said land on or before the 1st. day of Oct., 1915, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Duncan National Bank at Duncan, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $20, which shall operate as a rental, and cover the privilege of deferring the completion of a well for three months from said date. In like manner and upon like payments or tenders, the completion of a well may further be deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

Omitting the introductory parts, the extension agreement is as follows:

"Whereas, said oil and gas mining lease is now owned by the party of the second part, and whereas, the party of the second part is desirous of securing an extension of the term of said lease for a period of 4 months from the date of the termination thereof, and as long thereafter as said party of the second part shall diligently continue drilling operations thereon, and as long thereafter as oil or gas or either of these is produced in paying quantities; and, whereas, said parties of the first part is desirous of granting said extension: Now, therefore, the parties of the first part for and in consideration of the sum of $400, in hand paid by the party of the second part, receipt whereof is hereby acknowledged, do hereby extend the term of the aforesaid oil and gas lease for a period of 4 months from the date of the termination thereof, and as long thereafter as said second party shall continue drilling operations on said leased premises, and as long thereafter as oil or gas, or either of them is found in paying quantities.

"It is agreed and understood by and between the parties hereto, that if the party of the second part fails to commence the drilling of a well on the above described premises within 4 months from this date, this extension shall be null and void.

"It is further agreed that this agreement is supplemental to and a part of the aforesaid oil and gas lease, and that it shall not change, alter or modify any of the provisions of said lease except the term thereof, as herein provided for."

188

The rentals were paid every three months as provided by the lease up to and including January 1, 1920. Plaintiff by his petition asserts that the extension agreement of January 14, 1920, merely extended the five-year term provided by the original lease, and left in force the forfeiture clause which required the payment of a rental of $20 each three months to defer the completion of a well; that a rental became due April 1, 1920, but was not paid; and that defendant has forfeited all rights, although defendant began a well about the middle of April, 1920, and completed the same in May.

If the extension agreement considered in connection with the original lease is clear and unambiguous in its meaning, to the effect that that provision of the lease requiring the payment of a rental every three months in order to defer the completion of a well was abrogated by the agreement, the demurrer was rightly sustained. Contracts must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful. Section 5039, C. O. S. 1921. The intention of the parties must be deduced from the entire agreement, and where a contract contains several provisions, all provisions must be looked to and considered together, and each so construed as to be consistent with every other part. Prowant et al. v. Sealy et al., 77 Okla. 244, 187 Pac. 235. It is also a general rule of construction that the court should place itself, as nearly as possible, in the position of the parties when the contract was entered into, and consider the instrument as drawn, its purpose, and the surrounding circumstances connected with the transaction, and thus determine upon what sense of the terms used. the minds of the parties met. Prowant v. Sealy, supra. The paramount rule in the interpretation of the oil and gas lease and the extension agreement supplemental thereto is to ascertain the intention of the parties and give effect to the same, if it can be done consistently with legal principles. Prowant v. Sealy, supra. And all technical rules of construction are subordinate to the general intentions of the parties when the same is ascertainable.

The main purpose of the oil and gas lease, together with the supplemental agreement, was to secure the production of oil and gas, and not to secure the payment of $20 each three months. That payment was made for the privilege to the lessee of delaying the completion of a well for a period of three months. The extension agreement, therefore, should be interpreted with this purpose in mind with a view of giving effect to that purpose instead of defeating it. By the terms of the original lease, had the term only been extended four months, even though the rental had been paid on April 1st, defendant would not have had three months from that date within which to complete a well. After adding four months to the original lease, it would still expire on June 10, 1920, in so far as the provisions of the lease are concerned. That portion of the oil and gas lease above quoted, and claimed by plaintiff to be in force after the execution of the extension agreement, provided that by the payment of the rental on a certain date, defendant would secure the privilege of deferring the completing of a well for a period of three months, which would, in this instance, be until July 1, 1920. The extension agreement says in plain and positive language that it is agreed and understood between the parties that if defendant fails to commence drilling a well within four months from January 1st, i. e., on or before May 14th, the extension agreement shall be null and void. If that part of the lease requiring the payment of a rental or completion of a well by a certain date were kept in force, why should the parties write another provision requiring the commencing of a well by May 14th? Such a provision would secure no greater rights to the lessor. Regardless of when the lessee began the well, it had to complete the well by June 10, 1920, or else the lease would lapse, that being the end of the term as extended. It appears that the parties had something entirely different in mind from the provisions in the operating and forfeiture clause of the lease. If the provisions of the lease in this regard remained in force under the extension, and the defendant had complied with the requirements therein by paying the rental on April 1st, he would have had until June 10th, to complete a well, while the new agreement makes an entirely new and different provision in this regard, and would be repugnant, at least in spirit, to those provisions of the lease, and inoperative to the extent that full effect could not be given both provisions. The original lease did not provide for the payment of a rental on April 1, 1920, which date was beyond the term of five years, and neither did the extension agreement provide for the payment of such a rental. It appears that the parties realized that a provision requiring the completion of a well within such limited time

was too harsh, in view of the unavoidable delays which frequently arise, and especially at that time of the year. That instead of requiring a well to be completed by a day certain, a provision requiring that a well be commenced on or before a day certain should be substituted. Under the latter provision, if the well were commenced by the day named, although the well was not completed by June 10th, if drilling operations were diligently continued, the lease would not lapse. After the execution of the extension agreement and payment of the $400, there was no obligation to commence or complete a well on or before April 1, 1920. If a well were not required to be commenced or completed on or before that date, it could not be said that there was an obligation to pay a rental. The language of the extension agreement will not justify a construction that the same was to become null and void on the 1st day of April, 1920, under any conditions or circumstances. And yet, if the provisions of the lease with reference to the payment of rental were carried in force under the extension, it would be necessary to say in the face of the plain language of the agreement to the contrary that it was intended that the same should become null and void on the first of April, were no rental paid or well completed. The only forfeiture provided by the agreement is that a well must be commenced on or before May 14th.

Defendant's principal argument is directed to that part of the extension agreement, wherein it is said that the agreement is supplemental to and a part of the oil and gas lease, that it shall not change, alter or modify any of the provisions of said lease except the term thereof "as herein provided for." It is then argued that the only change that was made in the original oil and gas lease was that four months were added to the term of five years provided in said lease. This construction would do violence to the general rules of construction and interpretation of written contract. It ignores the general purpose of the oil and gas lease, and particularly that portion of the agreement which provides that if a well be not commenced on or before May 14, 1920, said agreement should be null and void. If the parties merely intended to add four months to the original term of five years, why did they not say only that without putting in said agreement new and additional conditions?

Much is said by counsel on both sides as to what is meant in the agreement by the word "term." Too frequently debate, in-volving nice distinctions of words and phrases without regard for context and the subject-matter in connection with which they are employed, misleads the most honest inquirer, and results in the substitution of a mere fiction for a solemn agreement between the parties. It would make no difference in this case whether 'term," as used in the lease and supplemental agreement, referred to the five years which the lessee could avail himself of by paying rentals every three months, or whether it referred to the shorter period which was available at any time for drilling purposes without doing anything further. Granting that the word "term" means the five-year period in the lease, that provision of the lease sought to be enforced by plaintiff has a direct bearing upon the term. In the case of Lester v. Mid-South Oil Co., 296 Fed. 661, the court, in construing an oil and gas lease, said that the terms "clause" and "development clause" referred to each other. Under that provision, whenever a rental paying date arrived, and no rental was paid or well completed, the term would end. Even under plaintiff's theory, that provision of the lease created a manner of keeping the five-year term alive by three months at a time, and also created a manner of terminating the term. Any provision that changes this clause may result in changing or modifying the five-year term provided in the lease and extended by the agreement. The extension agreement modified and changed the term of the original lease by adding to the period of five years a period of four months, and by providing that if no well be commenced on or before May 14th the term should end; and instead of requiring the payment of a rental of $20 every three months, provided for the payment of $400, as a consideration for the extension of the five-year term and all other rights and privileges therein contained including the right to defer the commencing of a well until May 14, 1920, without the privilege of paying rental to defer the time within which to commence or complete the well beyond that date. Under the agreement, if a well be commenced on or before May 14th, and drilling prosecuted diligently, the lease would remain in force regardless of when the well was completed.

Both parties were in possession of all the facts concerning the lease at the time of the execution of the extension agreement. They knew that the lease was about to expire by its term; that the conditions by which the lease could be kept alive were that a well must be completed on or before a certain date or pay a rental; and that

the payment of a rental alone would not keep the lease alive beyond the term. They knew that an extension of time was necessary if oil or gas were produced under the lease; that during the winter and early spring months drilling was slow and uncertain; and that a more elastic provision for keeping the lease alive with the ultimate view of producing oil and gas was highly desirable. The extension agreement was entered into in the light of all these facts with an intention on the part of both parties that a well should be drilled as soon as practicable, both parties receiving a substantial consideration for its execution. Although the original lease contained the provisions above referred to, there seemed to be no occasion for carrying them in force under the new plan. They were not directly mentioned in the extension agreement, but certain provisions were placed therein which were unnecessary and useless if those provisions of the original lease were intended to be operative. The rental theretofore required to be paid was a matter of trifling importance at the time the new agreement was made, and we are unable to see from a most careful consideration of the two instruments that the minds of the parties met in such a sense as to retain in force that part of the lease requiring the payment of a rental or the completion of a well on or before April 1, 1920. But we are of the opinion from the language of the extension agreement, and the circumstances under which it was executed, that it was intended that the operating or forfeiture clause of the lease should be abrogated by the extension agreement.

Counsel for plaintiff also say that the petition contained sufficient allegations of estoppel to make the petition good against a demurrer. There is no merit in this suggestion for the reason that the petition affirmatively alleges facts which preclude the application of the doctrine of estoppel, and we feel that there is no need for a further discussion of the question.

Plaintiff's petition alleged that, on or about April 17, 1920, defendant entered into a written contract with James H. Miller and wife by the terms of which defendant attempted to validate the original oil and gas lease and extension agreement; that on said date defendant recognized that said lease and the extension agreement had been forfeited by paying said lessors the rental which was due April 1, 1920. Counsel contends that this allegation shows a practical construction between the parties to the instruments, in which the parties construed and interpreted the contracts to require the payment of a rental on April 1, 1920. Where a contract is ambiguous and uncertain, evidence of a contemporary construction placed thereon by the parties themselves, at a time when their relations were harmonious, is admissible as tending to show what their understanding of the contract was. According to the petition, plaintiff had purchased a one-half interest in the land in question, and had notified defendant of a claim to one-half of the mineral rights, by reason of defendant having failed to pay a rental on April 1st, and after this defendant paid the rental. Payment of a rental under these circumstances would not amount to a practical construction of the oil and gas lease and the extension agreement. This allegation merely shows that defendant, after learning that a claim was being made to an interest in its oil and gas rights, attempted to defeat same. It must appear that the acts of the parties were prompted by a desire to comply with what they understood the terms of their contract were, and not by some other motive before evidence of such acts is admissible.

We are therefore of the opinion that the trial court correctly interpreted the extension agreement; that the petition did not state a cause of action; and that the general demurrer was rightly sustained. The judgment of the trial court is therefore affirmed.

BENNETT, HERR, DIFFENDAFFER, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.