No. 36,310

A. T. Spikes, *Appellant,* v. John S. Weller, John O. Wicks, Benedum-Trees Oil Company and Trees Oil Company, *Appellees.*

(156 P. 2d 540)

Opinion
filed March 10, 1945.

*J. S. Brollier,* of Hugoton, was on the briefs for the appellant.

*A. E. Kramer,* of Hugoton, and *George T. McNeish* and *S. C. Bloss,* both of Winfield, were on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action to cancel an oil and gas lease, to quiet title to real estate, and for damages. A demurrer to the petition was sustained, and plaintiff appeals.

Omitting formal parts, in his petition plaintiff alleged that he was the owner of the northeast quarter of section 3, township 35, range 38, in Stevens county, Kansas, and that the defendants claimed some interest therein by reason of an oil and gas lease dated January 12, 1928, made by Isaac H. Mitchell and wife to Victor H. Martin and W. A. Barrington as lessees. The defendants include assignees of the above lessees and others whose interest is not specifically shown. For brevity we shall not repeat the number of the section, township and range. A copy of the lease was made a part of the petition.

The lease was dated January 12, 1928, covered the East Half of the above section, and among its other provisions provided that it should remain in force for a term of five years from date or as long as oil or gas or either of them was produced from said land, and further that if no well be commenced on the land before January 12, 1929, the lease should terminate unless the lessee should pay the sum of $320 as a rental and to cover the privilege of deferring the com-

mencement of a well for twelve months from that date, and in like manner and payments the commencement of a well might be deferred for like periods of the same number of months successively. Other provisions are not presently of importance.

It was further alleged in the petition that subsequent to the execution of the lease and prior to August 1, 1932, the then owners of the lease drilled a well on the southeast quarter which was completed as a well capable of producing natural gas in paying quantities; that thereafter on August 9, 1932, the Mitchells executed and delivered to the then owners of the lease an instrument designated "Extension Agreement", by the terms of which the lease on the northeast quarter would expire on January 12, 1938, unless oil or gas was found by development on the land prior to that date; and that the agreement also provided for annual delay rentals of $160 during the extended term of the lease. A copy of this agreement was made part of the petition.

The extension agreement dated August 9, 1932, recited the execution of the lease on the east half of the section and the desire of the parties to extend its term and provided that in consideration of one dollar the original term should be extended for a period of five years from the original expiration date, it being understood that during the period of extension the same rentals per annum should be paid, and that the extension agreement did not change or vary the terms of the original lease except as to date of expiration of the same, "this simply being an extension so that the date of expiration of said lease shall be the 12th day of January, 1938." The final paragraph of the extension agreement read as follows:

"It is further agreed that rentals will be paid on the above described land until gas is marketed from the well located in the center of the S. E. of Sec. 3; and it is further agreed that the annual delay rentals will be paid on the N. E. Sec. 3 until a well is drilled thereon or the lease surrendered."

The petition then further alleged the filing on October 28, 1936, of an affidavit of production covering the southeast quarter, and that sometime in 1936 the gas well located in the center of the southeast quarter was connected to a pipe line and ever since has been and now is producing natural gas in paying quantities.

It was further alleged that after the execution of the extension agreement, the lessee or assigns, paid to the owner of the northeast quarter, annual delay rentals in the sum of $160 up to and including a payment in December, 1942; that subsequent thereto plaintiff be-

came the owner of said land; that on or about December 23, 1943, defendants (assignees of the lessee) tendered to plaintiff the sum of $160 which they stated was for the annual delay rental under the lease on the northeast quarter for the year commencing January 12, 1944, which tender was refused by plaintiff.

It was further alleged that no development or production had been had or obtained on the northeast quarter; that the extension agreement permitted the lessee to perpetuate the lease on the northeast quarter by payment of annual delay rentals to January 12, 1938, or by production prior to that date, and that no production having been obtained during the primary date as extended, the lease expired by its own terms on January 12, 1938; that defendants had never operated the lease on the east half of the section as a producing unit of 320 acres, but had always operated the lease on the southeast quarter as a producing unit of 160 acres and had operated the lease on the northeast quarter as a nonproducing lease held by payment of annual delay rentals.

It was further alleged that defendants refuse to release the lease of record on the northeast quarter of section 3, demand for such release having been made; that the lease is of no force or effect but constitutes a cloud on plaintiff's title; that defendants' refusal to release entitled plaintiff to $100 statutory damages and a reasonable attorney's fee; that by reason of defendants' failure to release, plaintiff had been unable to lease, to his damage in the sum of $1,000. He prayed for judgment, cancelling and holding for naught the lease on the northeast quarter, quieting his title, and for the several items of damages.

We are not advised as to whether service was had on all parties named as defendants, but a part of them demurred on the ground the petition did not state facts sufficient to constitute a cause of action. The trial court sustained that demurrer and it is from this ruling plaintiff appeals.

Appellant's theory of his case is clearly shown in his brief. He states positively this was not an action for forfeiture of an oil and gas lease nor for damages for breach of a contract where excuses for nonperformance might be pleaded, but that the action was one to cancel a lease which had expired by its own terms. His contention is that the term of the lease, as evidenced by the original lease and the extension agreement, was not extended by the happening of any

contingency provided in the lease contract and associated documents. The field of inquiry is thus limited.

Appellant argues that the original lease, the extension agreement and the affidavit of production must be considered together, citing *Towel v. Fluharty,* 110 Kan. 260, 203 Pac. 703, to which appellees agree. Appellant further argues that the agreement so evidenced must be interpreted in accordance with the reasonable intendment of the parties, if such intendment can be ascertained from the four corners of the agreement, and that may be conceded. After directing our attention to the holding in *Stady v. The Texas Company,* 150 Kan. 420, syl. ¶ 2, 94 P. 2d 322, that oil and gas leases, in cases of ambiguity, are ordinarily construed most strongly against the lessee and in favor of the lessor, appellant says that if it had been the intent to extend the term of the lease on the northeast quarter beyond January 12, 1938, plain language to that effect would have been used. Without elaboration we note appellant's further argument that a court of equity has no power to extend an oil and gas lease (*Kahm v. Arkansas River Gas Co.,* 122 Kan. 786, 253 Pac. 563); that the fact an oil and gas lease has not been released of record is no evidence that it is still in force (*Cement Co. v. Brick & Tile Co.,* 100 Kan. 547, 164 Pac. 1087); that it is not necessary for the lessor to comply with the provisions of G. S. 1935, 55-202, to clear his record title of an oil and gas lease before beginning his statutory action to obtain a judgment cancelling the lease and for statutory damages (*Elliott v. Oil Co.,* 106 Kan. 248, 187 Pac. 692), and that under G. S. 1935, 55-205, the record of an oil and gas lease imports notice of its continuance only for the term stated, unless an affidavit is filed showing the happening of the contingency effecting an extension, and in the instant case no such affidavit had been filed.

Under the rule contended for by appellant, and conceded to be correct by the appellees, we consider the situation disclosed by the petition and exhibits attached, and it appears that on January 12, 1928, an oil and gas lease was executed covering the east half of a section. The primary term was five years, and as long thereafter as oil and gas were produced. Details as to delay rentals are not of present importance. During the primary term and prior to August 1, 1932, a producing gas well was drilled on the southeast quarter. This gas well was not connected to a pipeline until sometime in 1936 but since that time it has produced gas in paying quantities. However, on August 9, 1932, an extension agreement was entered into

which recited the execution of the original lease on the east half of the section and extended the original lease for a period of five years, or until January 12, 1938, and provided further for rentals on the above described land until gas from the well on the southeast quarter was marketed and that the annual delay rentals on the northeast quarter would be paid "until a well is drilled thereon or the lease surrendered." We may pause here to say that had nothing further been done, at that stage it was clear the entire lease was extended and the lessees were obligated to pay delay rentals of $320 per annum until they marketed gas from the existing well, and thereafter to pay the share from the well and the delay rentals on the northeast quarter "until a well is drilled thereon or the lease surrendered." There was and is no ambiguity about the above provision. The allegations in effect are that all parties understood their rights clearly and the lessees paid and the lessors accepted annual delay rentals of $160 thereafter not only to January 12, 1938, but up to and including the year ending January 12, 1944. Even though the agreement had been ambiguous, the parties to it placed their own practical interpretation on it.

Appellant seems to contend the filing of the affidavit on October 28, 1936, changed the situation. That affidavit recites that a certain corporation owned an undivided interest in the original lease covering the southeast quarter; that the lease provided that it shall be in force for five years and as much longer as oil or gas is produced in paying quantities; that the original lease had been extended and that gas has been found in paying quantities in a well drilled on the land pursuant to the terms of said lease "and said lease is still in force and effect." For six years thereafter the lessees tendered and the lessors accepted the delay rentals, and it was not until after December, 1942, when plaintiff acquired the northeast quarter, that any question arose.

We cannot agree with the proposition suggested by appellant that the above course of dealings and events shows the lease was never operated as a unit but that there was a separation of the lease so that it may be said there was a lease on the southeast quarter, kept alive by the gas well, and a lease on the northeast quarter, which expired January 12, 1938. On its face there was only one lease, and the extension agreement and the affidavit referred to only one lease.

The allegations of the petition that the lease was never operated

on the east half, but was separately operated as to the northeast quarter and the southeast quarter, are contradicted by the written instruments pleaded and relied on. Without the written instruments, appellant would have stated no cause of action. All of the allegations show he was not entitled to relief.

We are of opinion the trial court did not err in its ruling on the demurrer, and its ruling is affirmed.