No. 38,293

T. E. DAILEY, *Appellant,* v. H. V. JOSLIN and SENORA W. JOSLIN, his wife; THE FIRST NATIONAL BANK OF SEDAN, KANSAS, a Corporation, and THE SINCLAIR PRAIRIE OIL COMPANY, a Corporation, *Appellees.*

(240 P. 2d 471)

Opinion filed January 26, 1952.

*John F. O'Brien,* of Independence, argued the cause, and *Robert S. Stuart,*

of Pawhuska, Okla., *John M. Wall,* of Sedan, and *O. L. O'Brien,* of Independence, were with him on the briefs for the appellant.

*Wm. E. Cunningham,* of Arkansas City, argued the cause, and *W. L. Cunningham, D. Arthur Walker,* and *William R. Howard,* all of Arkansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action to quiet title to an oil and gas lease, to determine the equities of the parties thereto, for costs and such other relief as to the court may seem just and equitable. A trial to the court resulted in judgment for defendants. Plaintiff has appealed.

In the petition, filed July 16, 1947, plaintiff's address was given as Omaha, Nebraska, and that of defendants as Peru, Kansas. It alleged that on November 20, 1945, defendants, as lessors, entered into an oil and gas lease with plaintiff as lessee covering that part of a described eighty acres of land in Chautauqua County, Kansas "lying South of the North line of what was formerly the right of way of the A. T. & S. F. Railway Company." (We pause to say this *is a triangular tract containing about ten acres;* the plat, used in the trial, shows the right of way entered upon the eighty-acre tract at the southeast corner thereof, extended to the north and west and left the west side of the eighty acres at a place where the south line of the right of way was 1,000 feet north of the southwest corner of the eighty-acre tract.) It was further alleged the lease was upon a "Producers 88B Federal" form, which among other things provided:

"That the lease was to remain in full force for a period of one year from the 20th day of November, 1945, and as long thereafter as oil or gas, or either of them, was produced from said land by the lessee.

"That if no well was commenced on said land on or before the 20th day of August, 1946, the lease was to terminate unless on or before the 20th day of August, 1946, the lessee paid to the lessor the sum of $10.00, which would operate to defer the commencement of a well for 12 months from said date.

"The lessor warranted and agreed to defend the title to the land decribed in said lease."

It was further alleged that on November 20, 1945, plaintiff and defendant H. V. Joslin entered into an agreement whereby it was agreed it would be necessary to quiet title to the real estate before drilling a well thereon; that Joslin agreed the lessors would institute a quiet title action and prosecute it to conclusion, in consideration of which plaintiff was to pay the attorney's fee and the court costs and should have six months from the date of the judgment in the

quiet title action to commence the drilling of a well on the property. It was further alleged that in accordance with the agreement just mentioned the lessors, on December 12, 1945, instituted an action in the district court of Chautauqua county to quiet title to the land described in the lease, and on January 18, 1947, a judgment was rendered by which the lessors acquired a clear title to that part of the leased premises lying north of the center line of the former right of way, but failed to clear their title to that part of real property described in the lease lying south of the center line of the right of way.

It was further alleged that immediately after the judgment in the quiet title action the defendants here drilled two oil wells upon that part of the land to which they were decreed to have a clear title, and in doing so they knew of their lease to plaintiff and that they were drilling at their own risk.

It was further alleged that since January 18, 1947, plaintiff drilled three wells on that part of the land described in the lease lying south of the center line of the right of way, to which it had been adjudged the lessors had no claim, and was ready and willing to drill on the part of the land adjudged to belong to defendants, but the possession was denied plaintiff by defendants.

It was further alleged plaintiff paid the cost deposit to commence the quiet title action and entered into an agreement with the attorney of plaintiff in that action to pay him a fee of $150 out of the oil runs from the premises; that he has not paid the balance of the costs nor the attorney fee, but "stands ready and willing to pay the balance of said court costs if and when he secures title to said oil and gas lease or when ordered to do so by the court."

The oil and gas lease, and the agreement of the same date were attached as exhibits to the petition. The lease was signed by H. V. Joslin and Senora Joslin, his wife; was duly acknowledged by both of them and shown to have been filed for record February 14, 1947, and duly recorded. The agreement between H. V. Joslin, first party, and T. E. Dailey, second party, was signed by them only. It was not acknowledged and is not alleged to have been recorded. This agreement, after stating that the first party, his wife joining, had entered into an oil and gas lease with the second party upon certain real property, describing it as in the lease, recited:

"Now it appears that it is necessary that the title to said real estate be quieted and perfected, before drilling a well on said real estate, and First Party agrees to institute Quieting Title proceeding on this, and other adjacent property, and

prosecute the same to completion. The attorneys fees and costs of the case to be paid by Second Party.

"It is further agreed that Second Party will start a well on the leased tract within six months from the date of the Judgment of the Quieting Title, and if no well is commenced, he will cancel the lease.

"Second Party is given six months from date of Judgment in quieting title suit in which to accept said lease and begin operations for a well."

This was signed by H. V. Joslin, as Party of the First Part, and T. E. Dailey, Party of the Second Part.

The defendants, H. V. Joslin and Senora W. Joslin, his wife, filed an answer to the petition in which they admitted the names and addresses of the parties; that on November 20, 1945, they executed the oil and gas lease which was on the form and contained the provisions set out in the petition and that they brought the action to quiet title, with the result all as stated in the petition. With respect to the agreement of November 20, 1945, it was alleged that agreement was between H. V. Joslin and T. E. Dailey only; that it was not signed by Senora W. Joslin, and that plaintiff has not performed his part of the contract in that he failed to pay the court costs and attorney's fee therein. It was further alleged plaintiff was never paid or tendered the payment due by the terms of the lease on August 20, 1946; that plaintiff has failed, before August 20, 1946, or at any time since, to commence the drilling of a well upon the premises described in the lease, and by reason thereof the lease was no longer in force and effect.

Defendant further alleged that at various times they called the attention of plaintiff and of his authorized agents that such well had not been commenced, nor payment made as in the lease provided and required, and by reason thereof the lease was terminated, and requested plaintiff to release the same of record, and further advised plaintiff or his agents that the land should be developed, and since plaintiff had not developed the land defendants intended to do so, to which plaintiff made no objection. That thereafter defendants made arrangements for drilling two wells upon the real estate to which their title had been quieted, both of which wells were completed as producers; that it was necessary for them to drill on their property in order to save the oil therein, because wells were being drilled on the land directly north, west and south of their land; that plaintiff knew these defendants were drilling on their land, at great expense, and made no objections thereto and are now estopped from claiming any right, title or interest in the land or the oil produced therefrom. It was further alleged plaintiff

knew the lease dated November 20, 1945, was no longer in force, had so stated to these defendants, and asked them to go to the office of a named attorney who would draw a new lease which would be binding, which defendants declined to do.

Defendants further alleged that the oil and gas lease theretofore made with the plaintiff has terminated and should be released of record. The prayer was that plaintiff take nothing by reason of the action and that defendants be discharged with their costs.

These defendants also filed a cross petition by which they sought an order to require plaintiff to release of record the lease of November 20, 1945, upon the grounds it was no longer in force and effect, including by reference the allegations of their answer and asking for the statutory penalty and attorney's fees authorized by G. S. 1949, 55-202, and that their title be quieted as against plaintiff.

Plaintiff filed a reply which admitted that he did not commence a well on the premises before August 20, 1946, and that he had not paid or tendered the sum due on that date, but denied the lease is no longer in force and effect, denied that the agreement of November 20, 1945, was without consideration, and generally denied other allegations of the answer.

Answering the cross petition plaintiff admitted its allegation respecting the names and addresses of the parties, the execution of the lease and its terms, and denied generally other allegations of the cross petition.

The record discloses the First National Bank of Sedan was made a party defendant because Joslin had given it a mortgage on the property, but that the mortgage had been paid. The Sinclair Prairie Oil Company, a corporation, was made a party defendant because it had purchased the oil from the two wells drilled by Joslin. The court permitted it to hold the proceeds of the oil purchased in a suspense account, to be paid as the court might direct.

When the case was called for trial the court was requested to make findings of fact and conclusions of law. The record relating to the title to the property, including the lease and agreement of November 20, 1945, and the files in the quiet title action, were received in evidence by stipulation. It was also stipulated that Joslin had expended $7,988.15 in drilling the two wells on his property and putting them on the pump and paying the pumper to October 1, 1949, and that the cost in the quiet title action in excess of the $15

deposited for costs and the attorney's fee had not been paid. The respective parties testified and called the witnesses in their behalf. At the close of the trial the court took the case under advisement and asked counsel to present suggested findings of fact and conclusions of law. Later this was done, and on January 5, 1950, the court filed its findings of fact and conclusions of law, which read:

"FINDINGS OF FACT

"1. That on the 20th day of November, 1945, the defendant, H. V. Joslin was the owner of record of the following described real estate, situated in the County of Chautauqua and State of Kansas, to-wit:

'All that part of the east half of the northwest quarter of Section 22, Township 34, South, Range 12, East of the 6th P. M., lying south of the north line of what was formerly the right of way of the Atchison, Topeka & Santa Fe Railway Company, and north of the center of what was formerly the main track of the Atchison, Topeka & Santa Fe Railway Company,'

and in addition claimed the ownership of all of the rest of the East Half of the northwest quarter of Section 22, Township 34, South, Range 12, East, lying south of the center of what was formerly the tracks of the Atchison, Topeka & Santa Fe Railway Company.

"2. That on November 20th, 1945, the defendants, H. V. Joslin and Senora W. Joslin, his wife, made, executed and delivered to the plaintiff, T. E. Dailey, an oil and gas lease covering the following described real estate located in Chautauqua County, Kansas, to-wit:

'All that part of the east half of the northwest quarter of Section 22, Township 34, South, Range 12, East of the 6th P. M. lying south of the north line of what was formerly the right of way of the Atchison, Topeka & Santa Re Railway Company;'

"That the terms of said lease provided that said lease was for a term of one year or as long as oil or gas or either of them was produced on said property; that if no well was commenced on said real estate on or before the 20th day of August, 1946, that said lease would terminate unless the lessee, T. E. Dailey, did, on or before that date pay to the Sedan State Bank of Sedan, Kansas, to the lessor's credit, the sum of $10.00 which would act as a rental on said property and defer the commencement of a well for twelve months from that date.

"3. That on November 20th, 1945, but subsequent to the signing of the oil and gas lease by the defendant, the defendant, H. V. Joslin and the plaintiff, T. E. Dailey entered into an agreement by which it was agreed between T. E. Dailey and H. V. Joslin that it was necessary to quiet the title to the property upon which the oil and gas lease had been given, before a well was commenced on said premises. That the plaintiff, T. E. Dailey was to pay the attorney fee and the costs of the quiet title action and that the defendants were to commence the action and prosecute the same to completion. That it further agreed that the plaintiff should have six months from the date of the judgment of the quiet title action to commence a well upon said property and if no well was commenced within six months from the date of said judgment, that plaintiff would cancel the oil and gas lease.

"4. That the agreement was signed by H. V. Joslin but was not signed by Senora W. Joslin; that Senora W. Joslin knew of said agreement, became a party plaintiff to the quiet title action brought in accordance with said agreement, attended the trial in the action to quiet title to said property on several occasions and has accepted the benefits of the quiet title action.

"5. That H. V. Joslin and Senora W. Joslin in compliance with the terms of the agreement commenced an action to quiet the title to said real estate and that T. E. Dailey in compliance with said agreement paid C. W. Spencer, a cost deposit of $15.00 and entered into an agreement with C. W. Spencer with reference to the attorney fee. That the quiet title action was commenced on December 12th, 1945, and was entitled 'H. V. Joslin and Senora W. Joslin, Plaintiffs, vs. George Oakes, et al, and was Case No. 6298, in the District Court of Chautauqua County, Kansas.'

"6. That the judgment of the District Court in said quiet title action was rendered on the 18th day of January, 1947, and that the defendants herein, H. V. Joslin and Senora W. Joslin were adjudged to be the owners of the following described real estate, to-wit:

'All that part of the east half of the northwest quarter of Section 22, Township 34, South, Range 12, East lying south of the north line of what was formerly the right of way of the Atchison, Topeka & Santa Fe Railway Company and North of the center of what was formerly the main track of the Atchison, Topeka & Santa Fe Railway Company.'

and that this was only a portion of the property included in the quiet title action and in the oil and gas lease to the plaintiff.

"7. That on January 23rd, 1947, the defendant, H. V. Joslin entered into a contract with Claude Appleby to drill three wells on the tract of land to which the title of H. V. Joslin and Senora W. Joslin was quieted and that shortly after January 23rd, 1947, the first well was commenced and was completed on or about the 17th day of February, 1947; that the second well was completed on or about the 7th day of March, 1947; and that the contract as to the third well was cancelled by agreement between C. D. Appleby and H. V. Joslin.

"That said Drilling Contract between H. V. Joslin and Claude D. Appleby was without the consent or knowledge of the plaintiff, T. E. Dailey and that not until early in February did T. E. Dailey learn of the commencement of the first well, and immediately thereafter, and prior to February 8th, 1947, the defendant, H. V. Joslin was advised by the plaintiff, T. E. Dailey acting through his attorney, John M. Wall, that plaintiff considered the oil and gas lease given to him by the defendants, H. V. Joslin and Senora W. Joslin as a valid lease and that any further drilling upon said property would be done at the defendant's risk. That in April 1947, demand was made by the plaintiff through his attorney, Robert Stuart for possession of said premises and that the defendants refused possession to the plaintiff.

"9. That there are two producing wells on said property and that the oil produced therefrom has been and is being sold to the Sinclair Oil & Gas Company, and that the Sinclair Oil & Gas Company has held in suspense all of the proceeds from the sale of the oil and now holds said funds in suspense pending the determination of this action; that as of September 1st, 1949, the Sinclair Oil & Gas Company held in its possession the sum of $16,313.57.

"10. That the plaintiff, T. E. Dailey did not make any payment of $10.00 as provided for in the original oil and gas lease, dated November 20th, 1945, and has not since that date tendered or made payment of this amount.

"11. That the plaintiff, T. E. Dailey has not paid all of the court costs and attorney fees in the action of H. V. Joslin and Senora W. Joslin, plaintiffs, vs. George Oakes, et al, defendants, No. 6298, but has stated in his petition that he stands ready and willing to pay the balance of the said court costs, if and when ordered to do so by the Court.

"12. That during the months of May, June and July, 1947, the plaintiff, T. E. Dailey drilled three wells on another lease adjoining the real estate in question on the south and that said wells were drilled prior to the expiration of six months after the date of the judgment in the quiet title in case No. 6398 (6298), became final.

"13. That the defendant, H. V. Joslin expended approximately $7988.15, on the two wells drilled on the property in question and that a fair and reasonable wage for a pumper for said well is $75.00 per month and that it has been necessary to have a pumper on said lease since March, 1947.

"14. That there was no cash consideration given for the oil and gas lease entered into on November 20th, 1945, between the lessors, H. V. Joslin and Senora W. Joslin, his wife, and the lessee, T. E. Dailey, and that there was no cash consideration given in consideration of the agreement entered into on November 20th, 1945, between the above parties for the extension of the drilling clause in said lease.

"15. That the agreement entered into between the lessor H. V. Joslin and the lessee T. E. Dailey, on November 20th, 1945, which was entered into subsequent to the time of executing the oil and gas lease extended the drilling clause in said lease only.

"16. That the plaintiff, T. E. Dailey never, at any time, made an attempt to enter on to the premises under controversy herein for the purpose of drilling and (an) oil and gas well.

"17. That no oil or gas was, or at any time has been produced from the premises described herein by the lessee, T. E. Dailey.

"CONCLUSIONS OF LAW

"1. That the agreement of November 20, 1945, extending the drilling clause in said lease did not extend the fixed time provided for in said lease.

"2. That the lease expired by its own terms on November 20, 1946, and was void from and after that date.

"3. That the title to the real property described herein be quieted as against the plaintiff, T. E. Dailey, and said lease be and the same is hereby released of record.

"4. That the defendants have and recover from the plaintiff the sum of $100.00 statutory damages.

"5. That the defendants have and recover from the plaintiff reasonable attorney fees in the sum of $500.00.

"6. That the plaintiff pay the court costs and attorney fees involved in the case of *Joslin, et al., v. Oakes, et al.,* No. 6298 in the District Court of Chautauqua County, Kansas."

The court rendered judgment in harmony with its findings and conclusions. Plaintiff filed a motion for a new trial, also a motion for judgment in its favor on the court's findings of fact. After a hearing both motions were denied and plaintiff appealed.

In this court appellant presents the following questions for our consideration: *First,* was the court correct in its conclusion that the agreement of November 20, 1945, signed by the defendant, H. V. Joslin, and the plaintiff, extended the drilling clause of the lease but did not extend the fixed term provided for in the lease, and that the lease expired November 20, 1946; and *second,* the disposition of the case in the event the court finds the court erred in its conclusions?

The principal question before us is the interpretation of the agreement and the construction to be given to it and the lease when both are construed together. Since the lease and the agreement were executed on the same day and both related to the same general subject, namely, the production by Dailey of oil from Joslin's land described in the lease, they must be construed together. (See, *Towel v. Fluharty,* 110 Kan. 260, 203 Pac. 703; *Skinner v. Skinner,* 126 Kan. 601, 270 Pac. 594, and *Spikes v. Weller,* 159 Kan. 597, 156 P. 2d 540.)

Upon the points first presented for our determination counsel for appellant cite *Towel v. Fluharty,* supra; *Hill v. Goering,* 132 Kan. 189, 294 Pac. 679; *Spikes v. Weller,* supra, and *Franklin v. Empire Gas and Fuel Co.,* 138 Okla. 186, 280 Pac. 839. While these cases contain matters persuasive in appellant's behalf none of them has the specific question presented here. On this point counsel for appellees cite *Perkins v. Sanders,* 109 Kan. 372, 198 Pac. 954. The detailed facts giving rise to that decision are not set out in the opinion. When the case reached this court it presented but two questions: *First,* did the lease by its own terms expire on the 20th day of October, 1920, unless oil and gas in paying quantities had been found upon the land? That was answered in the affirmative by a clause in the lease. The *second* question was: If the lease did expire were lessors estopped to secure a declaration of its termination and to evict lessee? That was answered in the negative by the conclusion of the trial court predicated upon conflicting testimony. Hence, the case is not very helpful here. When the trial court sent its findings of fact and conclusions of law to counsel in a letter it advised that the court's decision was based upon the following authorities:

Vol. 2, Summers Oil and Gas, Page 162, Sec. 303;

Mills & Willingham, Page 138, Sec. 88;

24 Amer. Jur. 564, Sec. 60;

*Perkins v. Sanders,* 109 Kan. 372, 198 Pac. 954.

We have already noted the Kansas case of *Perkins v. Sanders,* supra. The other authorities mentioned by the court are not referred to in any of the briefs filed with us. However, they have been examined. In general they point out the distinction between a drilling clause and the fixed term of the lease, usually incorporated in the habendum clause, and point out that the courts, particularly in the early history of oil and gas litigation and in the leases then written, were strict in holding that each must be considered separately in determining the rights of the parties. The general authorities, for sections or pages, continue pointing out different things which have been done to avoid hardships in the original leases and holdings, and in some instances clauses have been inserted in the lease by which the lease may be extended beyond the fixed time stated in the habendum clause. One of those was ruled upon in the case of *Tate v. Stanolind Oil & Gas Company,* No. 38,528, this day decided. Scores of other cases involving provisions of the lease, or provisions of the extension of the drilling clause or of the fixed term of the lease, are cited in the general authorities, and each of them finally uses a term tantamount to the one found in our case, *Gas Co. v. Neosho County,* 75 Kan. 335, 339, 89 Pac. 750, where it was said: "Each instrument must be interpreted in the light of its own peculiar provisions." We have also examined many of the cases cited in West's Digest under "Mines and Minerals," Key No. 73½, and reached the same conclusion that has been reached by the general authorities. So, our task here is to examine these two instruments—the lease and the agreement of the same date—construe them together and determine the real contract between the parties with respect to the questions presented.

Preliminary thereto we take note of the fact pointed out by appellees, that there was no cash consideration for the lease, that the one dollar mentioned therein was not paid, and the suggestion there was no consideration for the lease. We think the mutual covenants of the parties constituted sufficient consideration. Counsel for appellees stress the fact that the agreement was signed only by the defendant, H. V. Joslin, and was not signed by his wife,

Senora W. Joslin. In view of the court's finding of fact No. 4, to which no objection was made, we think it clear that question is of no importance. Perhaps it was of no importance in any event, for such title as the Joslins had stood in his name, and since the land described in the lease is not claimed as a homestead or to be otherwise exempt there is no reason why he alone could not make a binding contract either to sell it, or to execute an oil and gas lease thereon, or to modify one which he had executed.

We now take up the consideration of the lease and agreement in their turn and the situation of the parties at the time they were executed. H. V. Joslin was a farmer who resided in the vicinity of the land in question and who had become interested in the oil business. It was stipulated at the trial that under date of August 25, 1945, the Ludowici Celadon Company, by a special warranty deed conveyed to H. V. Joslin the property described in the lease, subject to the rights of other parties not important here. T. E. Dailey lived in Omaha, but for several years had been interested in the oil business in Chautauqua county. At some time, not shown, they got together and talked about the leasing of this property, and on November 20, 1945, they went to the office of Senator C. W. Spencer, an attorney at law of Sedan, and a man of high character. The parties discussed the matter, as a result of which Joslin and his wife executed to Dailey the oil and gas lease in controversy. It provided:

". . . this lease shall remain in force for a term of One years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

It contained several provisions which might vary that one-year term. For example, it provided that if no well was commenced on the land by August 20, 1946, the lease should terminate unless the lessee should pay or tender the lessors, or deposit in a named bank to their credit, the sum of $10, the payment of which "sum shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date." It also provided that if the first well drilled was a dry hole, "if a second well is not commenced on said land within twelve months" from the time covered by the last rental payment the lease should terminate unless rental payments were resumed. It contained a clause pertaining to the situation which would exist if a well was commenced within the term of the lease, "or any extension thereof," with respect to the rights of the parties. These provisions are

pointed out only to show that the lease is not one of the old form referred to in the general authorities which stopped everything at the date fixed for the termination of the lease. What is more important is that Joslin knew that his title to the land was not good enough to justify the drilling of a well until his title in the land should be quieted. This is clearly evidenced by the statement in the agreement:

"Now it appears that it is necessary that the title to said real estate be quieted and perfected, before drilling a well on said real estate."

In that situation Senator Spencer drew for the parties the agreement, executed the same day, and in this instrument it was provided:

"First Party (Joslin) agrees to institute Quieting Title proceeding on this, and other adjacent property, and prosecute the same to completion. The attorneys fees and costs of the case to be paid by Second Party (Dailey)."

Such a suit was brought and completed. The agreement continues:

"It is further agreed that Second Party (Dailey) will start a well on the leased tract within six months from the date of the Judgment of the Quieting Title, and if no well is commenced, he will cancel the lease."

Now we cannot assume that these people intended to limit the time when a judgment would be rendered to quiet title so as to be as much as six months before November 20, 1946, one year after the date of the lease. In their agreement they placed the limitation upon the date of the judgment quieting title. Frequently a quiet title action may be completed in three or four months, but where it is contested, as the quiet title action was which was brought under this agreement, the time when the final judgment would be entered might be much later than the year from the date of the lease. Indeed, the quiet title action might have been appealed and several months consumed with that. In this situation the parties did the only reasonable thing fair-minded men could do, namely, fixed a time for the beginning of a well from the date of the judgment in the quiet title action without regard to the drilling clause or the time the lease was to run, as stated in the lease. Under the trial court's holding the lease had expired and become void two months before the judgment was rendered in the quiet title action. Is that what the parties intended? Certainly not. They were not trying to destroy the lease; they were trying to get Joslin's title to the land described therein determined so Dailey could operate un-

der the lease. The result is that the judgment of the trial court setting aside the lease and allowing statutory damages and attorneys' fees must be set aside.

Under the second question presented for our determination, namely, the disposition of the case in the event this court finds that the lower court erred in setting aside the lease, appellant argues that the defendant Joslin is not entitled to be reimbursed for his expenses in drilling the two wells and for their operation. We think this point is not well taken. Early in February, 1947, perhaps a few days prior to February 8, the plaintiff learned that Joslin was starting to drill or drilling on this land under the claim that the lease itself had expired. He could have brought this suit promptly instead of waiting until two days before six months after the decree in the action quieting title. We think Joslin is entitled to reimbursement for those expenses in the amount found by the court.

The result is that the judgment of the trial court setting aside the lease should be reversed and the court should be directed to enter a decree that the lease executed by the parties on November 20, 1945, is a valid, existing oil and gas lease. The case should be otherwise disposed of as follows: Of the money for the purchase price of the oil from the two wells drilled by Joslin held in a suspense account by the Sinclair Prairie Oil Company, a corporation, there should be paid, *first*, to defendant, H. V. Joslin, one-eighth thereof, being the one-eighth royalty provided in the lease. *Second*, there should be paid to H. V. Joslin the sum of $7,988.15 stipulated by the parties and found by the court to have been expended by Joslin on the two wells drilled on the property in controversy and the cost of pumping the wells to October 1, 1949, plus necessary and reasonable expenses incurred by Joslin since that date in operating such wells. If necessary, the court may hear evidence as to such additional expenses. *Third*, the clerk of the district court of Chautauqua county should be paid the costs in excess of the $15 deposit in the quiet title case entitled *"Joslin v. Oakes*, No. 6298," in that court. *Fourth*, since C. W. Spencer, the attorney for the plaintiff in the quiet title action, had died prior to the time of the trial of this action the $150 attorney's fee, which the court found the plaintiff had agreed to pay, should be paid to his widow, Mrs. C. W. Spencer. The remainder of the money in the suspense account should be paid to the plaintiff, T. E. Dailey, and he should be put in possession of the leased property decreed to belong to Joslin.

It is so ordered.